Carl M. and Sue MILLER, Sally Korff, Allen Investment and Realty Company, Plaintiffs,

v.

Don G. CALVIN, Dean R. Calvin, Gary C. Wilkins, Thomas P. Briggs, William J. Barrett, James F. Barton, Jr., Edward M. Lee, Jr., Jerry R. Bergeson & Associates, Incorporated, and Calvin Exploration, Inc., Defendants.

Civ. A. No. 82–F–2253.

United States District Court, D. Colorado.

Oct. 22, 1985.

Gerald L. Bader, Jr., Denver, Colo., for plaintiffs.

Charles Battles, Jr., Denver, Colo., for defendant Don G. Calvin.

H. Alan Dill, Robert McAllister, Denver, Colo., for defendant Dean R. Calvin.

Robert Roth, Jr., Marc Morris, William Thompson, Denver, Colo., for defendant Gary C. Wilkins.

Daniel T. Smith, Denver, Colo., for defendant Thomas P. Briggs.

Jay Horowitz, Denver, Colo., for defendants William J. Barrett and Edward M. Lee, Jr.

Bruce H. DeBoskey, Denver, Colo., for defendant James F. Barton, Jr.

Michael Villano, Golden, Colo., for defendant Jerry R. Bergeson & Associates, Inc.

Robert C. Hawley, Denver, Colo., for defendant Calvin Exploration, Inc.

## MEMORANDUM OPINION AND ORDER

SHERMAN G. FINESILVER, Chief Judge.

THIS MATTER comes before the Court on the defendants' motions to dismiss plaintiffs' second amended complaint.

Plaintiffs' originally filed this suit on December 30, 1982, naming Don G. Calvin, Dean R. Calvin, Gary C. Wilkins, Thomas P. Briggs (the inside directors of Calvin Exploration, Inc. ("CEI")), and Jerry R. Bergeson & Associates, Inc., a petroleum engineering consulting firm as defendants. Plaintiffs allege that defendants made materially false and misleading representations in the Preliminary Prospectus, Prospectus and Registration Statement distributed in connection with an August 1980 public offering of CEI common stock. Despite the fact that an issuer has virtually strict liability for the alleged securities violations, CEI was not named as a party in the original complaint. Neither were the underwriters nor the outside directors named as defendants though they too are potentially liable parties. On April 2, 1984, plaintiffs belatedly named as defendants William J. Barrett, James F. Barton, Jr., and Edward M. Lee, Jr., CEI's outside directors at the time of the public offering ("outside directors") and CEI itself. The Second Amended Complaint seeks relief under sections 11 and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k and 77o; sections 10(b) and 20 of the Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t, and Securities Exchange Commission Rule 10b–5; the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq.; Colorado state securites laws, Colo.Rev.Stat. §§ 11–51–125(2) and (3) (1984 Cum.Supp.); and on a theory of common law fraud.

## I

■ The defendants, outside directors and CEI, have moved to dismiss under Fed. R.Civ.P. 12(b)(6) on the ground that the one year statute of limitations applicable to plaintiffs' section 11 claim ran on January 3, 1983. Plaintiffs do not dispute that the statute of limitations expired that day. They assert, however, that the April 2, 1984 amendment adding the defendants relates back to the date the original complaint was filed.

Fed.R.Civ.P. 15(c) provides:

"An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied (which requires that the amended pleading arose out of the conduct set forth in the original pleading) and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for the mistake concerning the identity of the proper party, the action would have been brought against him."

The rule sets forth three separate requirements which must be met in order for an amendment adding new parties to relate back to the date the original complaint was filed. There is no question that the first requirement is met. The claims asserted against the outside directors and CEI arise out of the same conduct, transaction or occurence set forth in the original pleading. Barrett and Lee assert that they did not recieve notice of this suit "within the period provided by law for commencing that action against (them)," that is, before January 4, 1983. Barton and CEI clearly had such notice. We need not decide whether the second requirement is met, however,

because the third requirement—that the newly added defendants knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him—is clearly not met.

The facts surrounding the institution of this lawsuit are set forth in detail in Judge Carrigan's December 20, 1984 order denying class certification. Those findings of fact are incorporated herein. It is clear that there was no mistake concerning the identity of the originally-named defendants or these defendants. Plaintiffs' counsel purposely chose to name only the four inside directors of CEI even though all the directors who signed the registration statement and the corporation could be held liable under § 11 and would ordinarily be named as defendants. Plaintiffs' counsel may have made a mistake of strategy or judgment, but there was no mistake concerning the *identity* of the proper parties. Rule 15(c) was obviously not enacted to serve as a general bypass for statutes of limitation. Rather it is intended to mitigate a statute of limitation's harshness in certain carefully defined circumstances where it is necessary to promote the policy underlying the law. *See* Fed.R.Civ.P. 15 advisory committee note on 1966 amendment to Rule 15(c).

The plaintiffs have cited three cases which they say support the proposition that the test for a mistake in identity is whether CEI and the outside directors knew or should have known that they were potential defendants. But these cases, fairly read, do not stand for the proposition that a plaintiff, having purposely elected to sue fewer than all potentially liable parties for strategic reasons, knowing full well the identity of each of these parties, can later change his mind without concern for the statutes of limitations applicable to his or her claims. First, the plaintiffs misconstrue *Holden v. R.J. Reynolds Industries,* 82 F.R.D. 157 (M.D.N.C.1979). The language relied upon by plaintiffs referred to a defendant's knowledge that a mistake in the identity of a proper party to the action had been made. It did not refer to whether

the defendant knew it was a proper party to the action. In fact, the court in *Holden* acknowledged that:

where a plaintiff files suit against a defendant and then seeks to add another defendant who may be equally liable, courts have ruled that the added defendant, even if he has knowledge of the original complaint, would not necessarily know that plaintiff had made a mistake in not naming him. (citations omitted). This situation is different from that where a plaintiff sues the wrong party. There the party to be added likely knows that a mistake was made. However, when the plaintiff merely sues one joint tort-feasor or obligor, the missing party is under no duty to speculate as to the reason plaintiff has not pursued him.

*Id.* at 163, n. 6. Second, plaintiffs have similarly misinterpreted the court in *Ratcliffe v. Insurance Co. of North America,* 482 F.Supp. 759 (E.D.Pa.1980). Again, the court in Ratcliffe was addressing the situation where a party had made a mistake in identity, not a deliberate decision. Finally, while the literal language of *Swartz v. Gold Dust Casino, Inc.,* 91 F.R.D. 543, 547 (D.Nev.1981) does support plaintiffs' argument, the *Swartz* case is clearly distinguishable. *Swartz* concerned a situation where the identity of the potential defendant was unknown to the plaintiff at the time of filing the original suit. The new defendant, however, clearly had notice that it was the party designated as "Doe I" in the original complaint. This is not the situation here. To the extent that the *Swartz* decision can be read to support plaintiffs' position in this case, we respectfully disagree and hold that the better interpretation of Rule 15(c) is exemplified by the decision in *King & King Enterprises v. Champlin Petroleum Company,* 446 F.Supp. 906 (E.D.Okla.1978) (a strategic choice of naming only some of the potential defendants and not others does not qualify as a mistake under Rule 15(c)).

■ The Court is not unaware that James F. Barton, Jr. was not named originally as a defendant because he was one of

the moving forces behind this lawsuit. While we are not pleased to see someone insulate himself from liability through misuse of the court system, we must conclude that Rule 15(c) simply does not allow relation back under these circumstances. Accordingly, Plaintiffs' First Claim for Relief is DISMISSED as to defendants CEI, Barrett, Barton and Lee.

## II

The defendants' have moved to dismiss plaintiffs fourth and fifth claims for relief. These claims allege violations of state securities law and common law fraud. The decision whether to accept jurisdiction of a state claim lies within the sound discretion of the trial court. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). This Court has consistently declined to exercise pendent jurisdiction over related state claims in cases arising under the federal securities laws. *Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 472 F.Supp. 402, 405, n. 3 (D.Colo.1979). We decline to exercise jurisdiction over plaintiffs' state claims in this matter. Accordingly, Plaintiffs' Fourth and Fifth Claims for Relief are DISMISSED as to all defendants.

## III

We turn next to the defendants' motions to dismiss the plaintiffs' Third Claim for Relief. This claim alleges that the defendants' have violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* The plaintiffs have confessed that this claim for relief, despite the terms of their complaint, is not brought against defendant CEI. Accordingly, CEI's motion to dismiss plaintiff's RICO claim is granted. The remaining defendants' motions require that we examine the plaintiff's allegations in light of the Supreme Court's recent analysis of civil RICO actions in *Sedima S.P.R.L. v. Imrex Co., Inc.*, — U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

The Court in *Sedima* stated that RICO is to be read broadly. 105 S.Ct. at 3286. To state a claim, a plaintiff need only allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity which causes injury in his business or to his property. *Id.* at 3285. The Court, however, did recognize the legitimate concerns of the lower courts stemming from RICO's evolving divergence from its original conception as a tool to fight organized crime, to a civil remedy of extraordinary breadth. *Id.* at 3287. The Court explained this divergence as being

"primarily a result of the breadth of the predicate offenses, in particular the inclusion of wire, mail and securities fraud, and the failure of Congress and the courts to develop a meaningful concept of *pattern.*"

*Id.* at 3287. (emphasis added). The Court further addressed the pattern requirement in note 14:

As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." As the Senate Report explained: "The target of (RICO) is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added).

*Id.* at 3285.

As noted by the court in *Northern Trust Bank/O'Hare v. Inryco, Inc.*, 615 F.Supp. 828, (N.D.Ill.1985), *Sedima*, 105 S.Ct. at 3285 n. 14 and 3287 spoke in dictum. "But its message was both plain and deliberate: Lower courts concerned about RICO's expansive potential would be best advised to focus on the hitherto largely ignored 'pat-

tern' concept." *Id.* at 832. Accordingly, we now turn to the question of whether the plaintiffs have sufficiently alleged a pattern of racketeering activity.

■ Paragraph 56 of the plaintiffs' Second Amended Complaint alleges that the defendants, "by participating in multiple activities constituting mail, wire and securities fraud engaged in a pattern of racketeering activity." Paragraphs 19–25 then specify these activities, which in essence, are allegations that the defendants' disseminated materially false and misleading information in the preliminary prospectus, prospectus and registration statement associated with a 1980 public offering of CEI common stock.[1]

■ We are of the view that while the plaintiffs have alleged multiple 'racketeering acts', they have failed to sufficiently allege a pattern of racketeering activity. They have alleged that there was a single fraudulent scheme to promote the sale of CEI common stock in a public offering in August 1980. All of the acts complained of were in furtherance of this single event. As the court in *Inryco* noted:

> True enough, "pattern" connotes similarity, hence the cases' proper emphasis on relatedness of the constituent acts. But "pattern" also connotes a multiplicity of events: Surely the continuity inherent in the term presumes repeated criminal activity, not merely repeated acts to carry out the same criminal activity. It places a real strain on the language to speak of a single fraudulent effort, implemented by several fraudulent acts, as a "pattern of racketeering activity."

*Northern Trust Bank/O'Hare v. Inryco, Inc.,* 615 F.Supp. 828 (N.D.Ill.1985), quoting *United States v. Moeller,* 402 F.Supp. 49, 57–58 (D.Conn.1975). Accordingly, de-

fendants' Motion to Dismiss plaintiffs' Third Claim for Relief is GRANTED.

## IV

Finally, defendants' have moved for a more definite statement regarding the identity of certain wells referred to in paragraphs 24, 26 and 27 of the plaintiffs' Second Amended Complaint. Paragraph 26 has been stricken and need not concern us. Further, paragraphs 24 and 27 are sufficiently definite for the defendants to frame a responsive pleading. Accordingly, the Motion for a More Definite Statement is DENIED.

The defendants Motion to Strike Paragraph 55(c) of the plaintiffs' Second Amended Complaint is rendered moot by our dismissal of the Third Claim for Relief. Accordingly, the motion to strike is DENIED.

## ORDER

It is hereby ordered that, pursuant to Fed.R.Civ.P. 12(b):

Plaintiffs' First Claim for Relief is DISMISSED as to defendants Barrett, Barton, Lee and CEI.

Plaintiffs' Third Claim for Relief is DISMISSED as to all defendants.

Plaintiffs' Fourth and Fifth Claims for Relief are DISMISSED as to all defendants.

It is further ordered that, pursuant to Fed.R.Civ.P. 12(f), paragraph 26, as well as paragraphs incorporating paragraph 26 to the extent they so incorporate, are STRICKEN.

---

**1.** Paragraph 26 of the plaintiff's Second Amended Complaint alleges that defendants published further misleading information in a series of press releases as well as the 1980 annual report of CEI. The defendants have moved to strike these allegations as these events occurred after the plaintiffs purchased their stock. Hence, these publications could not have proximately caused the plaintiffs' injuries. We agree. The Motion to Strike paragraph 26, as well as those paragraphs incorporating paragraph 26, to the extent they so incorporate, is GRANTED. Accordingly, these allegations are not considered in our determination of the sufficiency of plaintiffs' allegation of pattern.