LILLIAN BOEHM, Plaintiff, *v.* JEFFREY S. GRANGER et al., Copartners Trading as SULZBERGER, GRANGER & Co., et al., Defendants.

Supreme Court, Special Term, New York County, May 3, 1943.

*William F. Unger* and *Arthur Goodman* for defendants.

*Boehm & Zeiger* for plaintiff.

BERNSTEIN, J. The defendants have moved to dismiss the fourth cause of action of the complaint upon the ground that it is insufficient in law or, in the alternative, that it did not accrue within the time limited for the commencement of an action thereon. The action was brought to recover damages for alleged false and fraudulent representations in the sale of certain securities, and the cause of action under attack is based on the charge that the sale was effected by means of a prospectus sent through the mails which included an untrue statement as to the tax liability of the company whose securities were so sold, in violation of subdivision (2) of section 12 of the Securities Act of 1933. [U. S. Code, tit. 15, § 77*l*, subd. (2); 48 U. S. Stat. 84.]

That section, insofar as pertinent, provides: " Any person who * * * (2) sells a security * * * by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact * * * shall be liable to the person purchasing such security from him * * * ".

The fourth cause of action charges that on September 10, 1940, the defendants, who were stockbrokers, sent a letter to the plaintiff, then the owner of 400 shares of the stock of the Chesapeake & Ohio Railway Company, which in effect recommended that she sell such stock and purchase 3,600 shares of the stock of The Chesapeake Corporation, and purported to set forth the assets and liabilities of the latter company. It charges that the letter was misleading in that it stated that that company had an accrued tax liability of $55,000 when in truth and in fact there had been. an assessment of $6,712,469.84 (later compromised at $1,200,000), and that, in acting on it, the plaintiff sustained a loss for which she may hold the defendants liable under the statute. In support of that portion of their motion which is addressed to insufficiency, the defendants point out that they were brokers, acting for the plaintiff, in the purchase of The Chesapeake Corporation stock and not sellers of such stock, and that, since the plaintiff did not purchase the stock *from* them, they do not fit the description of one ". liable to the person purchasing such security from him ".

That argument loses sight of the purpose of the statute as disclosed in its title: '' An act to provide full and fair disclosure of the character of securities sold in interstate and foreign commerce and through the mails, and to prevent frauds in the sale thereof, and for other purposes ''. (48 U. S. Stat. 74.) The statute was enacted to meet a growing need for the protection of investors from false and misleading statements by those interested in the sale of securities, whether they be the issuing company, the underwriter or the broker. Since most of our corporate securities are traded in through brokers, it is manifest that the adoption of the narrow construction contended for would deprive the investing public of the needed protection. The defendants' argument also loses sight of the fact that, both under the customary practices of our stock exchanges and the applicable law of stockbrokerage, a broker purchasing stock for a customer is in legal effect a principal, primarily liable for the purchase price and the receipt and delivery of the stock purchased (Campbell on Stockbrokers [2d ed.] pp. 29, 30).

Moreover, under subdivision (3) of section 2 of the Act [U. S. Code, tit. 15, § 77b, subd. (3)], the term '' sell '' is defined to include the '' solicitation of an offer to buy, a security ''. If, in the course of such solicitation, the seller makes a false statement under the circumstances referred to in section 12 (U. S. Code, tit. 15, § 77*l*) the purchaser is given a right of action, and that is true regardless of whether the seller is a principal or a broker or whether he himself owns the security or is merely acting as an agent for the owner or the purchaser or both. (*Murphy* v. *Cady*, 30 F. Supp. 466, 469, affd. 113 F. 2d 988, certiorari denied 311 U. S. 705.) As the District Court stated it in that case (pp. 469, 470): '' The ordinary brokerage transaction, merely the execution of orders to buy or sell, does not appear to be affected by Section 12. It is the extra-brokerage activity — solicitations accompanied by false statements — which are made the basis for a cause of action if damage is caused thereby.'' With that interpretation of the statute it is evident that the pleaded cause of action is sufficient.

The defendants also seek a dismissal of the fourth cause of action under subdivision 6 of rule 107 of the Rules of Civil Practice. Section 13 of the Securities Act (U. S. Code, tit. 15, § 77m) prescribes a time limit for the maintenance of an action under paragraph 2 of section 12 [U. S. Code, tit. 15, § 77*l*, subd. (2)]. It requires the action to be commenced within one year after the discovery of the untrue statement. The

complaint alleges that the Commissioner of Internal Revenue had been examining the books and affairs of The Chesapeake Corporation for a long time before the date of the alleged false statement, that shortly after that date he assessed the company's tax liability at $6,712,469.84 plus interest, and that such assessment was compromised and settled on June 30, 1942, for the sum of $1,200,000. It appears that the plaintiff learned of the assessment on October 4, 1940, but did not commence her action until January 6, 1943.

The representation in suit was that the company had a tax liability of only $55,000. The assessment made by the Commissioner on September 25, 1940, was merely a claim and not a fixed liability. It was subject to contest by the company and adjudication by the courts. It might have been compromised at considerably less than the amount claimed, even at less than $55,000. It did not become a fixed charge until it was actually adjusted on June 30, 1942, and the plaintiff could not definitely ascertain her damage before that date. It was only then that the statute began to run.

Motion to dismiss is denied. Order signed.