**Anthony WILKO, Plaintiff,**

**v.**

**Joseph E. SWAN et al., individually and doing business under the firm name and style of Hayden, Stone & Co., Defendants and Third-Party Plaintiffs, and Haven B. Page, Defendant (James A. McCabe, Third-Party Defendant).**

United States District Court,
S. D. New York.

Jan. 11, 1955.

See, also, D.C., 107 F.Supp. 75.

Henry E. Mills and Richard H. Wels, New York City, for plaintiff.

Chadbourne, Parke, Whiteside, Wolff & Brophy, New York City, for defendants and third-party plaintiffs.

John H. Glaccum, New York City, for third-party defendant.

BICKS, District Judge.

Plaintiff instituted this suit to recover damages under Section 12(2)[1] of the Securities Act of 1933 as amended, 15 U.S.C.A. § 77a et seq. (herein referred to as "the Act"), alleging that the defendants, Joseph E. Swan, et al., individually and as co-partners doing business under the firm name and style of Hayden, Stone & Co. (herein referred to as Hayden Stone), and Haven B. Page, a director and stockholder of Air Associates, Inc., sold him 1,600 shares of common stock of said corporation by

1. So far as material to this case it provides:

"Sec. 12. Any person who * * *

"(2) sells a security * * * by means of * * * oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, * * * shall be liable to the person purchasing such security from him * * *."

means of oral communications which included untrue statements of material facts and omitted to state material facts necessary in order to make the statements in the light of the circumstances under which they were made, not misleading. Hayden Stone impleaded James A. McCabe, a former employee, as a third-party defendant.

It is uncontroverted that plaintiff's order to buy was solicited by Hayden Stone and that the transaction was executed on the New York Curb Exchange, a national securities exchange.

At the time of the sale a registration statement was not in effect as to said securities. Plaintiff contended that the circumstances in this case required compliance with the registration provisions of the Act. Accordingly, at the trial plaintiff was permitted to amend the complaint to set forth as a second cause of action a claim under Sec. 12(1) of the Act.

I was of the belief that submission of the cause to the jury for a general verdict would by the very nature of the suit necessitate complicated instructions on the law [2] and, therefore, as authorized by Rule 49(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., required the jury to return a special verdict in the form of a written finding upon each of seven issues of fact.[3]

The jury found that defendant Page did not directly or indirectly control Air Associates, Inc.,[4] thus obviating the need for an answer to the question [5] whether Page's sales through Hayden Stone constituted a distribution requiring registration under the Act. Judgment was, therefore, directed in favor of the defendants on the cause of action predicated on Sec. 12(1) of the Act.

2. "Complicated instructions have always been ludicrous and vicious: ludicrous in that only the naive can believe lay juries are capable of absorbing all the legal elements involved: vicious in that lack of comprehension leads to confusion and ultimately, injustice." 5 Moore's Fed.Prac. 2d Ed. (1948) p. 2207.

3. The seven issues submitted to the jury were:

(i) Was the sale made by means of an untrue statement of a material fact to the plaintiff or the omission to state a material fact necessary in order to make the statements in the light of the circumstances under which they may have been made, not misleading? (ii) Did Hayden, Stone & Co., or any person in its employ whose duty it was to give Hayden, Stone & Co. such information, or McCabe, know or could they or any of them have known in the exercise of reasonable care of such untruth or omission? (iii) Did Page or any agent of his whom he appointed to carry out the sale of his stock obtain any information in the course of the carrying out of his assignment or whose duty it was to give him such information know or could they or any of them have known in the exercise of reasonable care of such untruth or omission? (iv) If the answer to question (i) is in the affirmative, was Hayden, Stone & Co. acting through McCabe in making such statements or omissions to

the plaintiff, the (a) Agent for Page? (b) Agent for both Page & Wilko? (v) Did Haven B. Page, directly or indirectly, control Air Associates, Inc.? (vi) Did the shares sold by Page through Hayden, Stone & Co. constitute a distribution? (vii) Did McCabe make any statement to Wilko which was the basis of your affirmative answer to question one, and which McCabe was not authorized to make?

4. Question (v), supra, was answered in the negative. This finding takes the defendant Page out of the orbit of an issuer, Sec. 2, sub-divs. (4) and (11), of the shares sold through Hayden Stone and the latter therefore was not an underwriter, Sec. 2, sub-div. (11), as those terms are defined in the Act. Thus the sales by Page were by the provisions of Sec. 4 of the Act exempted from the provisions of Sec. 5 (which provides generally that it shall be unlawful for any person directly or indirectly to make use of any means or instrument of transportation or communication in interstate commerce, or the mails, in connection with the sale of a security, unless a registration is in effect as to said security) and, therefore, Sec. 12(1) which, by its express language is limited to a person who sells securities in violation of Sec. 5, is not applicable.

5. Question (vi), supra.

The cause of action against McCabe, the impleaded defendant, was disposed of favorably to him by the jury's finding that "he has no responsibility whatever and should not be held liable for any damages". Implicit in that verdict is a finding that McCabe did not make any statements to the plaintiff which *he* knew were untrue and that *he* did not knowingly omit to state material facts necessary in order to make his statements in the light of the circumstances under which they were made not misleading. Judgment was, therefore, directed in his favor dismissing the third party complaint.

After deliberating for more than seven hours, the jury was unable to agree on answers to the remaining four questions. Such disagreement leaves unanswered the fact questions which must be resolved in order to adjudicate the first cause of action.

At the close of the plaintiff's case, and again after all the evidence was in, the defendants made various motions to dismiss the complaint and for a directed verdict. Decision was reserved on these motions.

■■ Defendants urge that the Act does not, and was not intended to deal with the obligations and responsibilities of a seller of securities engaged in a trading transaction on a national securities exchange. This contention reflects a failure to distinguish between the provisions of the Act requiring registration and those imposing liability for fraud. The civil liabilities provision of Sec. 12(2) is but part of a broad integrated program designed to obtain "honest dealings in securities"[6]. The program has two major aspects: One relates generally to disclosure of pertinent information in connection with offerings of securities to the public whether by way of primary or secondary distributions so that investors may have an opportunity to exercise an informed judgment; the other, which applies not only to offerings by an issuer but to sales generally, is designed to curb fraud and deception by imposing liability for misrepresentations.

■ As respects the first of these, before an issue of securities may lawfully be offered to the public full disclosure of all material facts must be made pursuant to the registration provisions of the Act[7]. Exemptions from the registration requirements are provided with respect to certain securities and security transactions which Congress, considering the interests of public investors and other factors, did not deem necessary to subject to these requirements[8]. Violations of these, as well as other provisions of the Act, may be enjoined by the Securities & Exchange Commission[9]. Civil liability for selling a security without complying with the registration requirements of the Act is provided by Sec. 12(1). The legislative program against fraud and deception in the sale of securities generally, however, is broader. Secs. 17 and 12(2) of the Act, respectively, render unlawful and authorize civil recovery for fraud and misrepresentation in the sale of securities even with respect to securities and security transactions which are exempted from the registration requirements. Thus, it is expressly provided in Sec. 17(c) that the exemptions from other provisions of the Act shall not be applicable as respects the broad prohibitions of that section. Similarly Sec. 12(2), with one exception, not material here[10] expressly renders these exemptions inapplicable as respects the corresponding broad civil liabilities provisions. The statutory policy has been described as that of "affording broad protection to investors"[11]. To effectuate this policy Sec. 12(2) creates

---

6. H.Rep. No. 85, 73d Cong., 1st Sess., p. 2 (1933).

7. Secs. 5, 6, 7 and 10.

8. Secs. 3(a), 4.

9. Sec. 20(b).

10. The sole exception is for government and bank securities exempted from the statute by Sec. 3(a) (2).

11. S.E.C. v. W. J. Howey Co., 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244.

59

a special right to recovery for misrepresentation which differs substantially from the common law action in that the seller is made to assume the burden of proving lack of scienter [12].

Under the defendants' proffered construction of Sec. 12(2), whether a "sale" is involved would turn upon the posture of the seller, i. e., as an issuer, underwriter, dealer, or trader employing the facilities of a national securities exchange.

Such a construction would frustrate the remedial purposes of the statute and lead to absurd and wholly incongruous results. The rights of a purchaser of securities publicly offered for sale would depend not upon whether fraud in fact was practised but upon the status of the vendor [13]. Fraudulent seller would be placed in two categories: one encompassing those engaged in the distribution of securities; the other, those engaged in trading transactions. Purchasers from sellers of the first category would have the protection and the benefits of the Act while purchasers from sellers of the latter category would not. Nothing in the Act reflects a more tender regard for the dishonest trader, nor a purpose to protect only purchasers defrauded by sellers other than traders.

■ The term "sale" or "sell" as used in the Act includes *every* contract of sale or disposition of a security or interest in a security for value [14] and Sec. 12 applies to any person who "sells a security". A broker who solicits a purchase order has been held to be a "person who sells" within the meaning of the Act [15]. A construction of the terms "sell" or "sale" which would exclude a sale by a trader on a national securities exchange would insert an exception where none appears in the Act and would operate to restrict said terms in derogation of the objectives of the Act.

■ Defendants do not take the position that a purchaser defrauded by a trader of securities dealt in upon a national securities exchange is without any remedy whatever, but would relegate such a victim to either a common law action for fraud or an action under the Securities Exchange Act of 1934, 15 U.S.C.A. § 78a et seq. [16]. The rights conferred upon a buyer under the Act and under the Securities Exchange Act of 1934 are concurrent and not mutually exclusive. The fact that a remedy might be available to a buyer under the one act does not preclude him from the benefits of the other and, indeed, he may choose the most efficacious remedy of which he can avail himself. Osborne v. Mallory, D.C.S.D.N.Y.1949, 86 F.Supp. 869; see also Rosenberg v. Hano, D.C. Pa.1940, 39 F.Supp. 714, affirmed 3 Cir., 1941, 121 F.2d 818. Both acts provide expressly that the rights and remedies provided thereby shall be in addition to

12. Wilko v. Swan, 346 U.S. 427, 431, 74 S. Ct. 182.

13. Since the undisputed facts in this case are that plaintiff's purchases were made upon a national security exchange it is not necessary to consider whether the Act was intended to apply to a transaction not involving a public offering. In Rudnick v. Bischoff, 1st Dept. 1940, 258 App.Div. 608, 17 N.Y.S.2d 575, a cause of action under the Act which alleged a private sale of a few shares of stock owned personally by the defendant and fraud in the sale thereof to the plaintiff was ordered dismissed, the Court stating that in its opinion the Act was not intended to apply to private sales. As far as this Court's research discloses this case has never been cited; Professor

Louis Loss in his work entitled "Securities Regulation" states that "the decision was clearly wrong" (p. 997).

14. Sec. 2(3) of the act.

15. See Murphy v. Cady, D.C.Me.1939, 30 F.Supp. 466, affirmed sub. nom. Cady v. Murphy, 1 Cir., 1940, 113 F.2d 988, certiorari denied 1940, 311 U.S. 705, 61 S. Ct. 175, 85 L.Ed. 458; Schillner v. H. Vaughan Clarke & Co., 2 Cir., 1943, 134 F.2d 875; Boehm v. Granger, 181 Misc. 680, 42 N.Y.S.2d 246, affirmed 268 App. Div. 855, 50 N.Y.S.2d 845.

16. For a discussion of the differences between the civil liabilities for fraud under the 1933 Act and the 1934 Act see Loss, "Securities Regulation", pp. 982–1098.

**60**

any and all rights and remedies that may exist at law or in equity [17].

Having concluded that the sale to plaintiff was within the scope of the Act, there remains the question of whether it was made by untrue statements of material facts or omissions to state material facts necessary in order to make the statements in the light of the circumstances under which they were made not misleading. Sufficient evidence on this question was adduced at the trial to create an issue of fact for determination by a jury.

Accordingly the defendants' motions are denied and a new trial ordered.

---

**17.** Sec. 16, 1933 Act; Sec. 28, 1934 Act.