**Paul J. SCOTCH and Scotch Motor Company, Inc., Plaintiffs,**

**v.**

**MOSELEY, HALLGARTEN, ESTA-BROOK & WEEDEN, INC. and Felix H. Sater, Defendants.**

**Civ. No. 88–1040.**

United States District Court, M.D. Pennsylvania.

Dec. 13, 1988.

James A. Doherty, Jr., Scranton, Pa., for plaintiffs.

Lee A. Rosengard, Keith R. Dutill, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Currently before the court is defendants' motion to dismiss count II of plaintiffs' complaint, which asserts a cause of action pursuant to section 12(2) of the Securities Act of 1933. *See* 15 U.S.C. § 771(2).[1] For

communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,

shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C. § 77*l*.

---

1. Section 12 of the Act reads as follows:
   Any person who—
   (1) offers or sells a security in violation of section 77e of this title, or
   (2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral

the reasons that follow, defendants' motion will be denied.

## BACKGROUND

The factual and procedural history of this case is contained in this court's Order of October 7, 1988. *See* document 11 of record. Briefly, plaintiffs contend that defendants failed to properly explain and disclose all of the risks inherent in securities trading, opened a margin account without proper authorization and "suitability," and used manipulative and deceptive devices to conceal the different transactions that had taken place in plaintiffs' accounts. *See generally* document 1 of record; *see also* document 9 of record, at p. 1.

By its Order of October 7, the court directed the parties to file supplemental briefs regarding the application of the United States Supreme Court's recent decision in *Pinter v. Dahl,* — U.S. ——, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988) to an action under section 12(2) in general and to the instant factual situation in particular. *See* document 11 of record, at p. 4. Defendants filed their supplemental memorandum on October 17, 1988. *See* document 12 of record. On November 1, 1988, plaintiffs filed a supplemental memorandum in opposition to the motion to dismiss. *See* document 14 of record. Defendants' reply time having elapsed without further submission to the court, their motion to dismiss is now ripe for disposition.

## DISCUSSION

■ On a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), the burden of proof lies with the moving party. *Johnsrud v. Carter,* 620 F.2d 29, 33 (3d Cir.1980). In ruling upon a motion to dismiss, all of the well-pleaded allegations of the complaint must be accepted as true and construed in the light most favorable to the party opposing the motion. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Truhe v. Rupell,* 641 F.Supp. 57, 58 (M.D.Pa.1985) (Rambo, J.). The motion should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976); *see also Kuchka v. Kile,* 634 F.Supp. 502, 506 (M.D.Pa.1985) (Nealon, C.J.).

■ Defendants first argue that, because they are not "sellers" within the meaning of section 12(2), plaintiffs' count based on section 12(2) must be dismissed. Defendants rely on *Collins v. Signetics Corp.,* 605 F.2d 110, 113 (3d Cir.1979), which held that, in the absence of some special relationship between the issuer and the actual seller of securities, a purchaser not in privity with the issuer has no claim under section 12(2) against the issuer. *See id.* at 113–114. The court believes, however, that defendants' argument must be rejected based on the Supreme Court's subsequent decision in *Pinter v. Dahl.*

In *Pinter,* the Supreme Court held that section 12 "[a]t the very least ... contemplates a buyer-seller relationship not unlike traditional contractual privity," 108 S.Ct. at 2076, but its scope was not limited to persons who pass title. *Id.* Instead, since "solicitation is the stage at which an investor is most likely to be injured," *id.* at 2078, the Court concluded that the term "seller" must include the person "who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Id.* at 2079.

*Pinter* was decided in the context of a section 12(1) action. While the court did not expressly "take a position on ... the scope of a statutory seller for purposes of § 12(2)," it did state as follows:

The "offers or sells" and the "purchasing such security from him" language that governs § 12(1) also governs § 12(2), which provides a securities purchaser with a similar rescissionary cause of action for misrepresentations.... Most courts and commentators have not defined the defendant class differently for purposes of the two provisions.... The question whether anyone beyond the transferor of title, or immediate vendor,

may be deemed a seller for purposes of § 12 has been litigated in actions under both § 12(1) and § 12(2). Decisions under § 12(2) addressing the "seller" question are thus relevant to the issue presented to us in this case, and, to that extent, we discuss them here.

*Id.* 108 S.Ct. at 2076 n. 20 (citations omitted).[2] In addition, the courts that have dealt with this issue subsequent to *Pinter* have uniformly applied its rationale in the section 12(2) context. *See, e.g., Abell v. Potomac Insurance Co.,* 858 F.2d 1104, 1113–1115 (5th Cir.1988); *Capri v. Murphy,* 856 F.2d 473, 478 (2d Cir.1988); *Laven v. Flanagan,* 695 F.Supp. 800, 812–813 (D.N.J.1988); *In re Worlds of Wonder Securities Litigation,* 694 F.Supp. 1427, 1434–1435 (N.D.Cal.1988); *In re Professional Financial Management, Ltd.,* 692 F.Supp. 1057, 1063–1064 (D.Minn.1988). This court agrees that *Pinter* should be applied to the present section 12(2) action. Defendants first argument must therefore be dismissed, since privity is no longer required to render one a "seller" under section 12(2).

Defendants also argue that

the 1933 Act was *not* designed to regulate broker transactions in the secondary markets of the national securities exchanges ... [but] was intended to provide civil remedies only for representations and omissions in the registration statements and prospectuses of *initial* offerings and recovery was restricted to the recision [sic] of the transaction or the offering price of the securities.

*See* document 7 of record, at pp. 4–5 (citations omitted). Thus, defendants conclude that, "[i]n the absence of an allegation of fraud arising out of an *initial offering,* plaintiffs cannot state a claim for relief under the 1933 Act." *Id.* at p. 5. The court must again disagree.

▋ The Supreme Court has repeatedly stated that the starting point in every case involving construction of the federal securities laws is the language of the statute

itself. *See, e.g., Pinter v. Dahl,* 108 S.Ct. at 2075; *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 197, 96 S.Ct. 1375, 1382, 47 L.Ed. 2d 668 (1976). Section 12(2) reads, in pertinent part, as follows: "Any person who ... offers or sells a security ... by means of ... [an] oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements ... not misleading ... shall be liable to the person purchasing such security from him...." 15 U.S.C. § 77*l*(2). Thus, section 12(2) is not limited by its terms to initial offerings, and the court's language in *Pinter* would seem to go against such a restrictive reading. *See Pinter v. Dahl,* 108 S.Ct. at 2077, 2078–2079; *see also Wilko v. Swan,* 127 F.Supp. 55, 58–60 (S.D.N. Y.1955); Steinberg, *Section 17(a) of the Securities Act of 1933 After* Naftalin *and* Redington, 68 Geo. L.J. 163, 180 (1979) ("Nothing in [section 12(2) ] specifically limits the prohibition of such 'oral communications' to those occurring only during the initial distribution"); *supra* at n. 2.

In addition, while it is true that the 1933 Act was *primarily* concerned with regulating the distribution of new securities, its scope is not so limited. *See Schaefer v. First National Bank of Lincolnwood,* 509 F.2d 1287, 1292 (7th Cir.1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976) (citing *Jordan Building Corp. v. Doyle, O'Connor & Co.,* 401 F.2d 47, 51 (7th Cir.1968)) (remedies supplied by the 1933 and 1934 Acts are cumulative and not mutually exclusive); *Wilko v. Swan, supra; see also* H. Bloomenthal, *Securities Law Handbook* § 11.05 at 284, 287–288 (1987–1988 ed.) (section 12(2) is "applicable to fraud committed in connection with the sale of securities by broker-dealers in organized trading markets"); Abrams, *The Scope of Liability Under Section 12 of the Securities Act of 1933: "Participation" and the Pertinent Legislative Materials,* 15 Fordham Urb. L.J. 877, 901–902 & n. 138 (1987); O'Hara, *Erosion of the Privity Requirement in Section 12(2) of the Securities Act of 1933: The Expanded Meaning*

---

**2.** One of the section 12(2) decisions discussed by the court was *Collins v. Signetics Corp., supra,* the case on which defendants rely. In *Pinter,* the court refused to read section 12 as "restrictively" as the *Collins* court. *See Pinter v. Dahl,* 108 S.Ct. at 2077.

*of Seller,* 31 UCLA L.Rev. 921, 927–929 & n. 18 (1984) (section 12(2)'s application to open market purchases limited only by privity requirement, which *Pinter* has now relaxed); Steinberg, *The Propriety and Scope of Cumulative Remedies Under the Federal Securities Laws,* 67 Cornell L.Rev. 557, 585–586 n. 179 (1982) ("Based on the *Naftalin* Court's language[3] and § 12(2)'s position in the Securities Act, it is arguable that the provision applies only to the initial distribution process. Such a construction, however, would be contrary to the plain language of the statute and the weight of judicial and scholarly authority"). Based on these authorities, the court agrees that, rather than arbitrarily limiting section 12(2) to initial offerings, it should apply section 12(2) to open market purchases subject only to the limitations imposed by the "seller" requirement. Since that requirement has been satisfied for purposes of defendants' motion to dismiss, *see supra* at pp. 96–97, the court will reject defendants' second and final argument and deny their motion to dismiss.

---

3. *See United States v. Naftalin,* 441 U.S. 768, 99 S.Ct. 2077, 60 L.Ed.2d 624 (1979). In *Naftalin,* a criminal case involving section 17(a) of the 1933 Act, the Supreme Court stated as follows:

Although it is true that the 1933 Act was primarily concerned with the regulation of new offerings, respondent's argument fails because the antifraud prohibition of § 17(a) was meant as a major departure from that limitation. Unlike much of the rest of the Act, it was intended to cover any fraudulent scheme in an offer or sale of securities, whether in the course of an initial distribution or in the course of ordinary market trading.... Respondent is undoubtedly correct that the two Acts prohibit some of the same conduct.... But "[t]he fact that there may well be some overlap is neither unusual nor unfortunate." *Id.* 441 U.S. at 777–778, 99 S.Ct. at 2084, 60 L.Ed.2d 624 (citations omitted).