**BANK OF DENVER, a Colorado Banking Association, Individually and on Behalf of all Others Similarly Situated, Plaintiff,**

**v.**

**SOUTHEASTERN CAPITAL GROUP, INC. f/k/a Southeastern Municipal Bonds, Inc., a Florida Corporation, First United Securities Group of California, Inc., a California Corporation, Michael Siemer, Kenneth W. Hutchison and Charlotte S. Hutchison, Robert C. MacElvain, Martha B. Taylor, Martha B. Taylor, P.C., Calkins, Kramer, Grimshaw & Harring, Calkins, Kramer, Grimshaw & Harring, P.C., H. Harold Calkins, Richard L. Harring, Victor L. Wallace, II, P.C., Robert L. Kirby, Ralph L. Poucher, P.C., James S. Bailey, Jr., P.C., John J. Tipton, P.C., Gilbert F. McNeish, P.C., Wayne B.**

Schroeder, P.C., Wendy J. Harring, Ward L. Van Scoyk, Bruce E. Deacon, T. Edward Icenogle, Richard L. Shearer, Matthew R. Dalton, John A. Eckstein, Frederick Huff, Charles E. Norton, and Terry L. Cook, Defendants.

Civ. No. 90–B–1551.

United States District Court,
D. Colorado.

May 9, 1991.

Joseph E. Meyer, III, Susan M. Hargleroad, William J. Martinez, Pendleton & Sabian, P.C., Denver, Colo., for plaintiff.

John D. Phillips, A. Peter Gregory, Hall & Evans, Denver, Colo., for Calkins' defendants except Van Scoyk.

Aldo DelPiccolo, Wood, Ris & Hames, P.C., Denver, Colo., for Taylors.

Larry F. Hobbs, Rita Byrnes Kittle, Hornbein MacDonald, Fattor and Hobbs, P.C., Denver, Colo., for Kenneth and Charlotte Hutchison.

Thomas D. Birge, Brega & Winters, P.C., Denver, Colo., for S.E. Capital.

Robert C. MacElvain, pro se.

Kim B. Childs, Dean A. McConnell, Cooper & Kelley, P.C., Denver, Colo., for Van Scoyk & Icenogle.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Hearing was held April 26, 1991 on four motions to dismiss plaintiff Bank of Denver's (the Bank) first amended class action complaint (amended complaint). The Bank alleges twelve claims arising from the is-

suance, offer and sale of bonds by the Will–O–Wisp Metropolitan District (the district) to finance a district development. The Bank alleges that the defendants violated federal and Colorado securities laws, and are liable for Colorado common law torts as well.

Because the Bank may show facts entitling it to relief on its claim under section 10(b) of the 1934 Security Exchange Act, and Securities Exchange Commission Rule 10(b)–5, I deny the motions to dismiss that claim. The amended complaint, however, fails to state a claim against the moving defendants under section 12(2) of the 1933 Securities Act and, thus, I grant the motions to dismiss that claim. I decline to exercise pendent jurisdiction over the Colorado state law claims, and I dismiss those claims without prejudice as to all defendants.

According to the amended complaint, the Bank brings this class action on behalf of itself and the purchasers of $4.1 million worth of bonds (the bonds) issued in August, 1986 by the Will–O–Wisp Metropolitan District. I have not certified any class. The bonds were to finance a development created and controlled by defendant developers. An ad valorem tax assessed by the district on real property in the district and the proceeds from a facilities fee agreement between the district and the developers were to repay the bonds. Defendant Robert C. MacElvain (guarantor) personally guaranteed the developers' obligation under the facilities fee agreement. The bonds were sold using a document entitled "Official Statement" which the Bank alleges was distributed to the purchasers. The official statement set forth the financing arrangement, including the facilities fee agreement and the guarantee.

According to the Bank, the developers have paid only $500,000 of the $1,110,000 cumulative total due September 1, 1988 under the facilities fee agreement. Furthermore, according to the Bank, the guarantor has failed to make good his guarantee. On December 29, 1989, the district filed for bankruptcy. The bond issue is now in default.

Based on the allegations, the Bank asserts twelve causes of action. Named in the amended complaint are: (1) underwriters (a) Southeastern Capital Group, Inc. (Southeastern), (b) First United Securities Group of California, Inc. (First United) and (c) Michael Siemer (Siemer) (director of First United and employed as an underwriter); (2) the developers Kenneth W. and Charlotte S. Hutchison; (3) guarantor Robert C. MacElvain; (4) attorneys (a) Martha B. Taylor & Martha B. Taylor, P.C. (Taylor) and (b) Calkins, Kramer, Grimshaw & Harring (Calkins) and partners of the firm. The Bank alleges in:

Count 1 all defendants violated section 10(b) of the 1934 Security and Exchange Act (1934 Act), 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5 (the 10(b) claims);

Count 2 all defendants violated section 12(2) of the 1933 Securities Act (1933 Act), 15 U.S.C. § 77*l*(2) (the 12(2) claims);

Count 3 Siemer violated section 20 of the 1934 Act, 15 U.S.C. § 78t;

Count 4 Siemer violated section 15 of the 1933 Act, 15 U.S.C. § 77v;

Count 5 all defendants violated sections 11–51–123 and 125(2) of the Colorado Securities Act;

Count 6 all defendants violated sections 11–51–125(3) and 125(5) of the Colorado Securities Act;

Count 7 all defendants are liable for negligent misrepresentation and negligence;

Count 8 all defendants are liable for fraud and deceit;

Count 9 all defendants are liable for civil conspiracy;

Count 10 Taylor is liable for professional negligence;

Count 11 Calkins, in its capacity as counsel for the underwriters, is liable for professional negligence;

Count 12 Calkins, in its capacity as bond counsel, is liable for professional negligence.

Defendants move to dismiss the 10(b), 12(2) and pendent state claims. Only

counts three and four, against Siemer are unchallenged in the dismissal motions. Calkins has withdrawn its motion to dismiss the 10(b) claim.

Dismissal under Rule 12(b)(6) is proper when it is evident from the plaintiff's amended complaint that the defendant is not liable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When ruling on a motion to dismiss, "the allegations of the complaint should be construed favorably to the pleader." *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686.

## I. THE 10(b) CLAIMS

In the 10(b) claim, the Bank alleges that the official statement was materially false in: (1) omitting that the net worth of the guarantor was insufficient to provide meaningful security for the payment of obligations under the facilities fee agreement; (2) overestimating the current value of the land and improvements in the Will-O-Wisp subdivision, the tax on which was the ultimate security for payment of the bonds, through the financial statement attached to the official statement; (3) captioning the bonds as "General Obligation Bonds" as opposed to indicating the bonds were revenue bonds; and (4) omitting that the bonds were not exempt from registration under section 3(a)(2) of the 1933 Act (15 U.S.C. § 77c(a)(2)), and that the trust agreement between the district and Colorado National Bank, the trustee, was not qualified as required by the Trust Indenture Act of 1939 (15 U.S.C. § 77aaa et seq.). Amended Complaint at 12–13 ¶¶ 45–48.

### A. *Statute of Limitations*

 Although the parties differ on the statute of limitations period applicable to 10(b) actions, I previously addressed that issue in *Johnston v. CIGNA Corp.*, 755 F.Supp. 339 (D.Colo.1991). As in *Johnston*, I conclude here that the three-year limitations period of Colorado Revised Statute section 11–51–123(1), the state counterpart to federal 10(b), applies to the Bank's

10(b) claims. *See Bath v. Bushkin, Gaims, Gaines and Jonas*, 913 F.2d 817, 818–19 (10th Cir.1990).

On the motions to dismiss, I cannot conclude that the action is barred by the statute of limitations. Even assuming, as defendants urge, that the statutory period began to run when the official statement and bonds were issued some four years before the Bank filed suit, because federal equitable tolling rules apply, the Bank may be able to show that the statute of limitations has not run.

### B. *Specificity*

Defendant Southeastern contends that the amended complaint fails to allege a 10(b) claim because it does not meet the pleading specificity requirements of Federal Rule of Civil Procedure 9(b).

Rule 9(b) does not ... require the pleading of detailed evidentiary matter, nor does it require any particularity in connection with an averment of intent, knowledge, or condition of mind. It only requires identification of the circumstances constituting fraud or mistake. That requirement means ... that individual plaintiffs should identify particular defendants with whom they dealt directly, and from whom they purchased stock; that individual plaintiffs should designate the occasions on which affirmative statements were allegedly made to them—and by whom; and that individual plaintiffs should designate what affirmative misstatements or half-truths were directed to them—and how.

*Trussell v. United Underwriters, Ltd.*, 228 F.Supp. 757, 774–75 (D.Colo.1964). The Tenth Circuit has adopted this formulation as "a correct statement of Rule 9(b) requirements in securities fraud cases." *Seattle-First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir.1986).

#### 1. Scienter

 Southeastern asserts that the Bank has not pled scienter adequately. In the amended complaint, the Bank alleges that Southeastern was "at least reckless in not ensuring that the truth was disclosed" in

the official statement. Amended Complaint at 14 ¶ 50. Consistent with *Seattle–First Nat'l Bank's* holding that 9(b) does not "require any particularity in connection with an averment of intent, knowledge, or condition of mind," I conclude that the Bank has pled scienter adequately.

### 2. Reliance

Southeastern next claims that the Bank does not allege direct reliance on the official statement in purchasing the bonds, but instead relies impermissibly on the fraud-on-the-market theory of reliance. The fraud-on-the-market theory is not available to the Bank, Southeastern asserts, because the Bank has failed to allege that the market was well developed and efficient.

The Bank contends, however, that the amended complaint does allege direct reliance on the official statement. The Bank does not, however, provide any reference to the amended complaint where it contends the allegations are found. My reading of the amended complaint reveals no allegation that the Bank obtained, read or used the official statement when it purchased the bonds.

█ Such direct reliance is not necessarily fatal, however. The Bank also may avail itself of two theories to establish a rebuttable presumption of reliance. The first theory, fraud-on-the-market, is available to 10(b) plaintiffs who purchased securities traded on an open and developed market, but who have not read or otherwise relied on the prospectus or other relevant document. *See Basic Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988); *T.J. Raney & Sons, Inc. v. Fort Cobb, Okla. Irrigation Fuel Auth.,* 717 F.2d 1330, 1332–33 (10th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1285, 79 L.Ed.2d 687 (1984). The second theory, fraud-created-the-market, is available to 10(b) plaintiffs who purchased from an undeveloped or primary market. *See Connett v. Justus Enter.,* No. 87–1739–T, 1991 WL 13076 (LEXIS Genfed library, Dist file) (D.Kan. Jan. 24, 1991).

Southeastern argues that the Bank may not rely on the fraud-on-the-market theory because the Bank never alleges that the bonds were traded on an efficient market. I agree. *Freeman v. Laventhol & Horwath,* 915 F.2d 193, 197–99 (6th Cir.1990); *Greenberg v. Boettcher & Co.,* 755 F.Supp. 776, 782 (N.D.Ill.1991); *In re MDC Holdings Sec. Litig.,* 754 F.Supp. 785, 804–05 (S.D.Cal.1990); *Eckstein v. Balcor Film Inv.,* 740 F.Supp. 572, 582 (E.D.Wis.1990); *Cammer v. Bloom,* 711 F.Supp. 1264, 1278 (D.N.J.1989). The Bank does not directly contest this. Rather, the Bank cites cases invoking the fraud-created-the-market theory of reliance. Consequently, I interpret the amended complaint as asserting fraud-created-the-market reliance.

█ This second form of presumed reliance arises where a plaintiff shows that but for the alleged fraud the security would never have been marketed and that the plaintiff relied on the integrity of the market to produce marketable securities. *See Connett,* No. 87–1739–T. To plead fraud-created-the-market reliance, the Bank must allege that: (1) Southeastern knowingly conspired to bring securities onto the market which were not entitled to be marketed, intending to defraud purchasers; (2) the Bank reasonably relied on the availability of the bonds on the market as an indication of their apparent genuineness; and (3) as a result of the scheme to defraud, the Bank suffered a loss. *See Shores v. Sklar,* 647 F.2d 462, 469–70 (5th Cir.1981), *cert. denied,* 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983); *Dalton v. Alston & Bird,* 741 F.Supp. 1322, 1327–28 (S.D.Ill.), *modified,* 116 F.R.D. 342 (S.D.Ill.1990).

Southeastern contends that the Bank does not plead that the bonds were not marketable absent the alleged fraud. I disagree. The Bank alleges that:

> Defendants knew or should have known when they sold, assisted or conspired with respect to the sale of the Securities to plaintiff and the class that the Securities were unmarketable. Plaintiff and the class reasonably relied on the fact that the Securities were available in the market as an indication of the marketability of the Securities.

Amended Complaint at 14 ¶ 51. After reviewing the facts alleged in the amended complaint, I cannot conclude that the Bank can prove no set of facts establishing the reliance element of its 10(b) claim against Southeastern.

■ The Bank ultimately bears the burden of proving that the fraud was "so pervasive that without it, the issuer would not have issued, the dealer would not have dealt in, and the buyer could not have bought these bonds, because they would not have been offered on the market at any price." *Shores,* 647 F.2d at 464 n. 2; *see T.J. Raney & Sons, Inc.,* 717 F.2d at 1330; *Freeman,* 915 F.2d at 200; *Ross v. Bank So., N.A.,* 885 F.2d 723, 729–31 (11th Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1924, 109 L.Ed.2d 287 (1990); *Abell v. Potomac Ins. Co.,* 858 F.2d 1104, 1122 (5th Cir.1988), *vacated,* 492 U.S. 914, 109 S.Ct. 3236, 106 L.Ed.2d 584 (1989). This issue is best resolved through motions for summary judgment or by trial.

Southeastern also argues that the Bank has failed to allege a third theory of reliance articulated in *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). There the Supreme Court held that where there is a duty to disclose an omission, "positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision." *Affiliated Ute Citizens,* 406 U.S. at 153–54, 92 S.Ct. at 1472. Because the Bank has sufficiently alleged reliance under the fraud-created-the-market theory, I need not address Southeastern's contention that the Bank's failure to show that Southeastern had a duty to disclose precludes application of the reliance analysis in *Ute Citizens.*

## II. The 12(2) Claims

The defendants argue that the 12(2) claim should be dismissed because (1) section 12(2) applies only to buyers of securities during the initial offering and the amended complaint shows that the Bank purchased from a secondary market, (2) the moving defendants are not "sellers" within the meaning of 12(2), (3) the statute of limitations for 12(2) actions ran before the Bank brought this action, and (4) the bonds are exempt from the 1933 Act because they were issued by a political subdivision.

### A. Secondary Trading

■ Southeastern and Calkins argue that the 12(2) claim must be dismissed because the amended complaint alleges that the Bank bought the bonds on a secondary market and 12(2) applies only to initial offerings. The Bank responds that 12(2) is not limited to initial offerings and even if it is so restricted, the amended complaint is sufficient to allege purchase through an initial offering.

Although the case law is divided, the trend favors limiting 12(2) actions to buyers in the initial offering. *Compare T. Rowe Price New Horizons Fund, Inc. v. Preletz,* 749 F.Supp. 705, 707–09 (D.Md. 1990); *Grinsell v. Kidder, Peabody & Co.,* 744 F.Supp. 931, 932–34 (N.D.Cal.1990); *Leonard v. Stuart–James Co.,* 742 F.Supp. 653, 658 (N.D.Ga.1990); *Mix v. E.F. Hutton & Co.,* 720 F.Supp. 8, 10–12 (D.D.C. 1989); *First Union Brokerage v. Milos,* 717 F.Supp. 1519, 1522–23 (S.D.Fla.1989); *McCowan v. Dean Witter Reynolds, Inc.,* Fed.Sec.L.Rep. (CCH) ¶ 94,423, 92,726–727, 1989 WL 38354 (S.D.N.Y. Apr. 11, 1989); *Cheltenham Bank v. Drexel Burnham Lambert, Inc.,* Fed.Sec.L.Rep. (CCH) ¶ 94,391, 92,542, 1989 WL 80279 (E.D.N.C. Mar. 15, 1989); *Strong v. Paine Webber, Inc.,* 700 F.Supp. 4, 5 (S.D.N.Y.1988); *Ralph v. Prudential–Bache Sec. Inc.,* 692 F.Supp. 1322, 1323–24 (S.D.Fla.1988); *Leonard v. Shearson Lehman/Am. Express, Inc.,* 687 F.Supp. 177, 179–80 (E.D.Pa.1988); *SSH Co. v. Shearson Lehman Bros., Inc.,* 678 F.Supp. 1055, 1059 (S.D.N.Y.1987); *Ackerman v. Clinical Data, Inc.,* Fed.Sec.L.Rep. (CCH) ¶ 92,207, 91,568, 1985 WL 1884 (S.D.N.Y. July 8, 1985); *Klein v. Computer Devices, Inc.,* 591 F.Supp. 270, 277–78 (S.D.N.Y.1984), *modified,* 602 F.Supp. 837 (S.D.N.Y.1985); *Gross v. Diversified Mortgage Investors,* 431 F.Supp.

1080, 1095 (S.D.N.Y.1977), *aff'd mem.*, 636 F.2d 1201 (2d Cir.1980) (12(2) applies only to initial offerings) *with Farley v. Baird, Patrick & Co.*, 750 F.Supp. 1209, 1219–21 (S.D.N.Y.1990); *In re Ramtek Sec. Litig.*, Fed.Sec.L.Rep. (CCH) ¶ 95,483, 97,520–21, 1990 WL 157391 (N.D.Cal. Sept. 7, 1990); *In re Consolidated Capital Sec. Litig.*, No. C–85–7332–AJZ, 1990 WL 82383 (LEXIS Genfed library, Dist file) (N.D.Cal. Feb. 28, 1990); *Wilko v. Swan*, 127 F.Supp. 55 (S.D.N.Y.1955) (12(2) applies to secondary offerings as well).

After consideration of the statute and the cases interpreting it, I adopt the rule of the Third Circuit. "In sum, the language and legislative history of section 12(2), as well as its relationships to sections 17(a) and 10(b) within the scheme of the 1933 and 1934 Acts, compel our conclusion that section 12(2) applies only to initial offerings and not to after-market trading." *Ballay v. Legg Mason Wood Walker, Inc.*, 925 F.2d 682, 693 (3d Cir.1991) (rejecting the alternative rule of *Elysian Fed. Sav. Bank v. First Interregional Equity Corp.*, 713 F.Supp. 737 (D.N.J.1989); *Hoxworth v. Blinder Robinson and Co.*, Nos. 88–0285, 0286, 0307, 1989 WL 56113 (LEXIS Genfed library, Dist file) (E.D.Pa. May 23, 1989); and *Scotch v. Moseley, Hallgarten, Estabrook and Weeden*, 709 F.Supp. 95 (N.D. Pa.1988)). Consequently, I hold that 12(2) does not provide a cause of action to buyers in secondary trading.

The Bank asserts that its amended complaint is sufficient to allege that the Bank purchased from an initial offering. The amended complaint, however, alleges that the Bank bought the bonds almost two years after the initial offering was completed. The Bank contends that although its purchase was long after the issuance, it relied on the official statement in purchasing the bonds which is the functional equivalent to buying during the initial offering.

The Bank does not allege that it bought bonds from Southeastern issued pursuant to the official statement nor does the Bank contend that it could make such an allegation in good faith. *See Leonard*, 742 F.Supp. at 658. I conclude, as a matter of

law based on the allegations in the amended complaint, that the Bank is a buyer of bonds from a secondary market. Consequently, because 12(2) is limited to buyers in the initial offering, the 12(2) claim is unavailable to the Bank.

**B.** *Seller of Securities*

1. Attorney Defendants

█ The attorney defendants, Taylor and Calkins, move to dismiss the 12(2) claim in part because they are not "sellers" of securities under 12(2). *See Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988); *Wilson v. Saintine Exploration and Drilling Corp.*, 872 F.2d 1124, 1126 (2d Cir.1989); *Abell*, 858 F.2d at 1114; *Capri v. Murphy*, 856 F.2d 473, 478–79 (2d Cir.1988). The Bank concedes this argument, but contends that I should dismiss the claim without prejudice because the action is still in its early stages of discovery. I disagree.

As the cases make clear and as the Bank concedes, the amended complaint is insufficient to state a cause of action against Taylor or Calkins under 12(2) and dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate. The Bank's claim that discovery might lead to a cause of action is speculative. Consequently, I dismiss the 12(2) claims against Taylor and Calkins on the merits and with prejudice.

2. Southeastern

█ Southeastern, an underwriter in the initial offering, contends that it is not a "seller" for purposes of 12(2) because the Bank purchased from the secondary market. To be a "seller," Southeastern would have had to either (1) actually transfer title to the bonds or (2) successfully solicit, motivated at least in part by a desire to serve its own financial interests, the purchase of the bonds by the Bank. *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988).

The Bank does not contend that Southeastern transferred title. Rather, the Bank argues that Southeastern, as an underwriter that substantially participated in the preparation and distribution of the official statement, solicited purchases. The Bank

bought the bonds in a secondary market, however, and does not allege that Southeastern directly solicited the Bank to purchase the bonds. Consequently, although the Bank is correct that an underwriter can be a seller for 12(2) purposes, it fails to allege that it purchased the bonds from Southeastern or that Southeastern had a financial motive to solicit the Bank to purchase the bonds. Thus, the 12(2) claim is not available to the Bank against Southeastern.

Because I conclude that the Bank cannot state a 12(2) claim for relief against Calkins, Taylor or Southeastern for the above reasons, I need not address the statute of limitations argument or the contention that the bonds are exempt under 15 U.S.C. § 77c(a)(2) as issued by a political subdivision.

### III. COLORADO TORT REFORM AND PARTNER JOINT AND SEVERAL LIABILITY

▇▇▇ Defendant Van Scoyk, a partner of the defendant Calkins law firm, contends that Colorado tort reform, abolishing joint and several liability for joint tortfeasors in certain actions, eliminated joint and several liability among partners in a partnership.

Colorado Revised Statute section 7–60–113 provides:

> Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership or with the authority of his partners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same intent [sic] as the partner so acting or omitting to act.

Section 7–60–115(1) provides that all partners to a partnership are jointly and severally liable for everything chargeable to the partnership under Section 7–60–113.

As part of Colorado tort reform, the Colorado legislature enacted Section 13–21–111.5 which provides:

> In an action brought as a result of a death or an injury to person or property, no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant that produced the claimed injury, death, damage, or loss, except as provided in subsection (4) of this section.

Van Scoyk contends that this later section replaces joint-and-several partner liability for partnership wrongs with a proportionality-of-fault rule. I disagree.

Research reveals no case law evaluating the effect, if any, of Colorado's tort reform on the law of partnership. Although the statutes pose a potential conflict, before concluding that one vitiates the other as urged by Van Scoyk, I must try to harmonize the two. *Colorado Civil Rights Comm'n v. Travelers Ins. Co.,* 759 P.2d 1358, 1368 (Colo.1988). Absent an explicit and express revision of section 7–60–113 by the Colorado legislature, I conclude that section 13–21–111.5 does not abrogate the well-established Colorado rule that partners are jointly and severally liable for the wrongs of the partnership. *See Lowell Staats Mining Co. v. Philadelphia Elec. Co.,* 878 F.2d 1271, 1279 (10th Cir.1989); *United States v. Hays,* 877 F.2d 843, 844 (10th Cir.1989); *Armstrong v. Armstrong,* 714 F.Supp. 451, 453 (D.Colo.1989); *National Commodity & Barter Assoc. v. United States,* 625 F.Supp. 920, 924 (D.Colo.1986); *Johnson v. Chilcott,* 599 F.Supp. 224, 226–27 (D.Colo.1984); *Kaneco Oil & Gas, Ltd., II v. University Nat'l Bank,* 732 P.2d 247, 250 (Colo.App.1986); *Ball v. Carlson,* 641 P.2d 303 (Colo.App. 1981); *see Mulock v. Wilson,* 19 Colo. 296, 35 P. 532, 535 (1893) (pre-sections 7–60–113 & 115). Given this long history and the silence of the Colorado legislature on the effect tort reform should have on partnership law, I conclude that partnership liability is left intact. The two statutes are thus reconciled.

### IV. PENDENT STATE CLAIMS

▇▇▇ Counts five through twelve allege violations of state securities law and common law torts. The decision whether to accept jurisdiction of a state claim lies within my sound discretion. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). I decline to

exercise pendent jurisdiction over related state claims in cases arising under the federal securities laws. *Johnston,* 755 F.Supp. at 339; *see Samuel v. Pace Membership, Inc.,* 686 F.Supp. 873, 875 (D.Colo. 1988); *Miller v. Calvin,* 647 F.Supp. 199, 203 (D.Colo.1985); *Kerby v. Commodity Resources, Inc.,* 395 F.Supp. 786 (D.Colo. 1975).

Accordingly, it is ORDERED THAT

(1) Martha B. Taylor and Martha B. Taylor, P.C.'s Motion to Dismiss Count II is GRANTED.

(2) Southeastern's Motion to Dismiss
 (a) Count I is DENIED;
 (b) Count II is GRANTED.

(3) Calkins Defendants' Motion to Dismiss
 (a) Count I is WITHDRAWN by Calkins Defendants;
 (b) Count II is GRANTED.

(4) Van Scoyk's Motion to Dismiss
 (a) Count I is DENIED;
 (b) Count II is GRANTED.

(5) Counts V through XII are DISMISSED without prejudice.