**Dick FARLEY, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**BAIRD, PATRICK & CO., INC., Stuart Patrick, Ray Dirks and Paul Morris, Defendants.**

**No. 90 Civ. 2168 (MBM).**

United States District Court, S.D. New York.

Nov. 19, 1990.

Richard G. Sablosky, New York City, for plaintiff.

Martin I. Kaminsky, Pollack & Kaminsky, New York City, for defendants.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff has sued defendants under Rule 10b–5, 17 C.F.R. § 240.10b–5, § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*, RICO, 18 U.S.C. § 1962, and state law based on alleged overcharges for commissions on his purchases of over-the-counter stock. Defendants have moved to dismiss, raising a host of issues including the statute of limitations, the reach of § 12(2), failure to plead fraud with particularity and failure otherwise to state a claim. As set forth below, the motion based on the statute of limitations is granted in part and denied in part. The remainder of defendants' motions are denied.

Plaintiff is a professional golfer, who lives half the year in Florida and the other half in Pennsylvania. During the period in contention in this lawsuit, plaintiff maintained individual, pension plan and profit sharing accounts with the securities brokerage firm Steinberg & Lyman, and when Steinberg & Lyman went out of business, defendant Baird, Patrick & Co., Inc. Plaintiff transferred his accounts to Baird, Patrick in order to follow his account executives, the two individual broker defendants, Ray Dirks and Paul Morris, from the defunct Steinberg & Lyman to Baird, Patrick. Plaintiff apparently maintains at least one other investment account, at Shearson Lehman Hutton in Stroudsburg, Pennsylvania. Individual defendant Stuart Patrick is the President of Baird, Patrick.

Both Steinberg & Lyman and Baird, Patrick were marketmakers in certain securities. Over the course of his relationship with these firms, plaintiff was solicited by the brokers Dirks and Morris to purchase penny stocks in which these firms made a market. This case arises from a series of purchases by plaintiff of two such stocks, Paperback Software International Corp. ("PSI") and Hybrilonics, from January 1986 to February 22, 1988.

As a market maker, defendant Baird, Patrick charges clients mark-ups rather than commissions on the purchase or sale of stocks in which defendant makes a market. Plaintiff testified at his deposition, the only discovery that has been conducted as yet, that he was aware that defendant was a market maker, but knew only vaguely what a market maker was. Plaintiff also testified that he never really understood what a mark-up was, and he refers to mark-ups and commissions interchangeably in the transcript of the deposition.

In February 1990, Farley fortuitously read a newspaper article reporting that Baird, Patrick had been sued for charging excessive mark-ups on penny stocks in which it made a market. One of the stocks mentioned was PSI. He then called Richard Sablosky, mentioned in the newspaper article as counsel for the plaintiffs, and asked him to investigate whether plaintiff Farley also had a claim. As a result of that investigation, plaintiff brought this suit, alleging that he was fraudulently

charged an excessive mark-up in connection with his purchases of PSI and Hybrilonics stock from 1986 through 1988.

Plaintiff's theory is that, as a market-maker, defendant Baird, Patrick and its employees were under a special duty not to take advantage of customers and had a duty to disclose an excessive mark-up. These are over-the-counter stocks whose prices are not listed other than through the NASD inter-dealer quotation system, often referred to as the "pink sheets." Plaintiff alleges that defendant Patrick would determine that certain pink sheet stocks should be aggressively marketed to retail clients, and then, knowing that clients cannot readily access current market prices, would determine a retail price without taking into consideration the actual current market price for each of these stocks as reflected in National Quotation Bureau's quotations or the prices paid in transactions between broker-dealers. Patrick allegedly would reward his account executives with above-average selling commissions for the selected stocks.

According to plaintiff, PSI and Hybrilonics were two such stocks. When Dirks and Morris recommended that plaintiff purchase these stocks, they quoted him the Baird, Patrick price without disclosing that it bore no reasonable relation to the true market price for the stock. Plaintiff argues that, having no reason to suspect that his brokers were not quoting him the lowest price obtainable, plaintiff reasonably but mistakenly believed that the price quoted him was fair, causing him to purchase the stocks at an unconscionable price.

Defendant moves to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b) arguing that plaintiff's Rule 10b–5 claims are time-barred and insufficiently pleaded, that plaintiff's § 12(2) claim is also time-barred and legally insufficient, that plaintiff's RICO claims are insufficiently pleaded and otherwise legally insufficient, and that plaintiff's state law claims should be dismissed for lack of subject matter jurisdiction.

## I.

Defendants seek summary judgment on plaintiff's Rule 10b–5 claim on two grounds: (1) that plaintiff's claim is barred by the applicable statute of limitations, and (2) that plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted because it fails to plead fraud with particularity as required by Fed.R.Civ.P. 9(b).

### 1. Statute of Limitations

*Ceres Partners v. GEL Associates,* 918 F.2d 349 (2d Cir.1990), was decided after this motion became fully submitted. In *Ceres Partners,* the Second Circuit adopted a new federal statute of limitations for Rule 10b–5 actions. In accord with the Third and Seventh Circuits, the Second Circuit, seeking to create a uniform statute of limitations for Rule 10b–5 cases, chose to adopt for such cases the statute of limitations which expressly governs much of the rest of the 1934 Act: no action shall be maintained to enforce any liability created under § 10(b), unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation. *Id.,* at 364; *see In re Data Access Systems Secur. Litigation,* 843 F.2d 1537 (3d Cir.1988) (*en banc*); *Short v. Belleville Shoe Manufacturing Co.,* 908 F.2d 1385 (7th Cir.1990) (Easterbrook, J.). Application of this new statute of limitations leads to the same result that would follow in this case if I were to apply New York state law, because under New York's borrowing statute I would be required to apply *Data Access.* Therefore, no rebriefing is necessary to deal with the Second Circuit's decision in *Ceres Partners,* New York law having been fully briefed by the parties.

The dates of plaintiff's purchases, as recorded in the trade confirmation slips, are listed below:

| | Stock | Sale Date |
|---|---|---|
| 1. | PSI | January 31, 1986 |
| 2. | PSI | February 26, 1986 |
| 3. | Hybrilonics | April 16, 1987 |
| 4. | Hybrilonics | May 1, 1987 |
| 5. | PSI | February 9, 1988 |
| 6. | PSI | February 11, 1988 |
| 7. | PSI | February 19, 1988 |
| 8. | PSI | February 22, 1988 |

Plaintiff filed his original complaint on March 29, 1990. After defendants moved to dismiss the complaint, the court granted plaintiff leave to file an amended complaint. Plaintiff's First Amended Complaint was served on April 30 and May 1, 1990.

The Second Circuit has held that "the statute commences to run when the plaintiff has actual knowledge of the alleged fraud or knowledge of facts which in the exercise of reasonable diligence should have led to actual knowledge." *Stull v. Bayard*, 561 F.2d 429, 243 (2d Cir.1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978). This is an objective standard; the statute begins to run when a person of ordinary intelligence would have suspected that he or she was being defrauded. *Goodman v. Shearson, Lehman Bros., Inc.*, 698 F.Supp 1078, 1082 (S.D.N.Y.1988). " '[W]here the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him.' " *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir.1983), citing *Higgins v. Crouse*, 147 N.Y. 411, 416, 42 N.E. 6 (1895). The parties agree that *Data Access* has been interpreted to require plaintiffs to satisfy the same standard: "The limitations period in Rule 10b–5 claims begins to run 'from the date plaintiff discovered or in the exercise of reasonable diligence should have discovered the facts underlying their claims.' " *Procacci v. Drexel Burnham Lambert, Inc.*, 1989 WL 121984, 1989 U.S. Dist. LEXIS 12208, at p. 6 (E.D.Pa.1989), quoting *ITG, Inc. v. Price Waterhouse*, 697

F.Supp. 867, 870 (E.D.Pa.1988); *Bradford–White Corp. v. Ernst & Whinney*, 699 F.Supp. 1085 (E.D.Pa.1988), *rev'd on other grounds*, 872 F.2d 1153 (3d Cir.), *cert. denied Ernst & Whinney v. Bradford–White Corp.*, —— U.S. ——, 110 S.Ct. 542, 107 L.Ed.2d 539 (1989); *Elysian Federal Savings Bank v. First Interregional Equity Corp.*, 713 F.Supp. 737, 745 (D.N.J.1989).

■ Defendants argue that the price of the securities plaintiff purchased is readily available from other brokerage firms, including plaintiff's Pennsylvania brokerage firm with which plaintiff was in contact on various other matters, and from the National Quotation Bureau. According to defendants, a reasonable investor would have called the National Quotation Bureau or another broker after having been quoted a price for the stock by defendants. A reasonable investor, according to defendants, would therefore have discovered defendants' alleged fraud contemporaneously with the purchases. Under defendants' analysis, all of plaintiff's claims are time-barred as not having been brought within one year of the transactions.

Under Fed.R.Civ.P. 56(c), a trial judge may grant summary judgment only if the evidence demonstrates that "there is no genuine issue as to any material fact and [that] the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact has been raised, a court must resolve all ambiguities and all reasonable inferences against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (*per curiam*), *cited in Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987).

I cannot find that, as a matter of law, plaintiff had a duty to suspect that his brokers were not charging him a reasonable price for stocks he purchased on their recommendation. Plaintiff has testified that he relied on the expertise of defen-

dants Morris and Dirks, employees of defendant Baird, Patrick, and based on his deposition testimony as to his longstanding relationship to them, this reliance was not, for purposes of summary judgment, unreasonable. Other courts have found that, for purposes of summary judgment, failure of a broker-dealer to disclose an excessive mark-up could constitute a material omission under Rule 10b–5. *See Ettinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 835 F.2d 1031 (3d Cir.1987) ("This fraud is avoided only by charging a price which bears a reasonable relation to the prevailing price or disclosing such information as will permit the customer to make an informed judgment upon whether or not he will complete the transaction."); *Elysian Federal Savings Bank v. First Interregional Equity Corp.*, 713 F.Supp. 737 (D.N.J.1989); *Krome v. Merrill Lynch & Co., Inc.*, 637 F.Supp. 910 (S.D.N.Y.1986). It is implicit in these holdings that a plaintiff may reasonably assume that any materially excessive mark-up will be disclosed by his broker. To impose a duty on the average individual investor to call other brokers or the National Quotation Bureau to double-check prices quoted him by his broker would be to impose a duty beyond reasonable diligence.

■ The statute began to run not on the dates of the transactions, but rather only when plaintiff was in possession of facts which gave him reason to believe defendants' mark-ups were excessive. According to plaintiff, this did not occur until he fortuitously read a newspaper article about defendants in 1990. Before then, plaintiff argues, he had no reason to suspect fraud. Defendants have pointed to nothing other than the pink sheets plaintiff could have obtained from other brokers or the National Quotation Bureau to prove that plaintiff should have known of the excessive mark-ups prior to the newspaper article. Because plaintiff brought his complaint within one year from the time he alleges he read the newspaper article that gave him reason to suspect fraud, none of plaintiff's claims are barred by the one-year discovery rule of *Ceres Partners*.

However, there are two prongs to the statute of limitations, both of which plaintiff must avoid in order to maintain an action under *Ceres Partners*. *Ceres Partners* holds that a plaintiff must bring a claim for a Rule 10b–5 violation "within three years after such violation." Two of plaintiff's claims allege violations which occurred in 1986, more than three years before plaintiff's Complaint was filed. Plaintiff alleges that defendants fraudulently concealed their actions, thereby tolling the statute of limitations. District courts in the Third Circuit have held that the doctrine of equitable tolling is not available under *Data Access*. The three-year outside limitation is an absolute limitation. *Ferreri v. Mainardi III*, 1989 WL 11071, 1989 U.S. Dist. LEXIS 1080 p. 11 (E.D.Pa.1989); *Zimmer v. Gruntal & Co., Inc.*, 732 F.Supp. 1330 (W.D.Pa.1989); *Cohen v. McAllister*, 688 F.Supp. 1040, 1045 (W.D. Pa.1988). It may be more precise to say that equitable tolling is applicable to these cases, but that it allows plaintiff to extend the statute of limitations only to a maximum of three years. The outer limit of three years is more in the nature of a statute of repose than a statute of limitations. The Seventh Circuit agrees. *Belleville Shoe Manufacturing Co.*, 908 F.2d at 1391.

Plaintiff has not pleaded facts sufficient to establish equitable estoppel, nor has he argued that defendants are equitably estopped to assert the statute of limitations as a defense. There is therefore no reason to discuss whether the Second Circuit would allow equitable estoppel to extend plaintiff's time to file beyond the three-year outside limitation. The Seventh Circuit has held that equitable estoppel cannot be used by plaintiffs to extend the three-year outside limitation. *Id.* Plaintiff's Rule 10b–5 claims based on the 1986 purchases of PSI stock in any event are time-barred.

■ Plaintiff's Rule 10b–5 claim based on his April 16, 1987 purchase of Hybrilonics stock is also time-barred. Plaintiff asserted this claim for the first time in the

First Amended Complaint, which was served on defendants on April 30, 1990, more than three years from the date of the transaction.

Fed.R.Civ.P. 15(c), governing relation back of amendments, states: "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." To determine whether new allegations relate back, the court must determine whether the original pleading gave the defendant sufficient notice of them. *Schiavone v. Fortune*, 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986); *Bornholdt v. Brady*, 869 F.2d 57, 68 (2d Cir.1989).[1]

The essence of plaintiff's Complaint is that defendants engaged in a practice of soliciting plaintiff to buy PSI stock, a penny stock in which defendant Baird, Patrick made a market, and then charging plaintiff excessive mark-ups on his purchases. The Complaint is specifically focused on plaintiff's purchases of PSI stock. Plaintiff did not allege that defendants engaged generally in an ongoing practice of charging excessive mark-ups on stocks in which they make a market. Allegations based on purchases of Hybrilonics stock arise out of transactions wholly separate from those implicated in the Complaint. Although these new claims allege conduct similar to the conduct originally charged, there is no allegation in the Complaint about any stock other than PSI such that defendants would have been on notice as of March 30, 1990 that sales of other stocks to plaintiff were also at issue.

■ Even if *Ceres Partners* had not been decided, the result here would be the same. The rule in the Second Circuit was that as Section 10(b) contains no express statute of limitations, the court must borrow the most analogous state statute of limitations. *Freschi v. Grand Coal Venture*, 767 F.2d 1041, 1046 n. 5 (2d Cir.1985),

vacated on other grounds, 478 U.S. 1015 (1986). In New York the federal courts applied the New York fraud statute of limitations to Rule 10b–5 claims. *Epstein v. Haas Secur. Corp.*, 731 F.Supp. 1166, 1177 (S.D.N.Y.1990).

Application of the New York common law fraud statute of limitations also requires application where appropriate of the New York borrowing statute, as follows:

> An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

N.Y. CPLR § 202 (McKinney 1972).

It is uncontroverted that plaintiff is not a resident of New York; if the cause of action accrued outside New York, and is barred where it accrued, then the New York borrowing statute requires that the action be barred in New York regardless of New York's six-year statute of limitations for common law fraud.

In securities fraud cases, the claim accrues where the economic loss occurs. *Appel v. Kidder, Peabody & Co.*, 628 F.Supp. 153 (S.D.N.Y.1986). Normally, an individual plaintiff suffers economic loss in the state in which he resides. *Haas Secur. Corp.*, 731 F.Supp. at 1178. The economic loss may be said to occur in a state other than the plaintiff's state of residence only in the "extremely rare" case where the plaintiff has shown "unusual circumstances." *Gorlin v. Bond Richman & Co.*, 706 F.Supp 236, 240 n. 8 (S.D.N.Y.1989).

Plaintiff has the burden to show that extraordinary circumstances exist that justify abandoning the usual rule. *Katz v. Goodyear Tire and Rubber Co.*, 737 F.2d 238 (2d Cir.1984). In determining whether plaintiff has met this burden, the court

---

**1.** Though defendants raise Rule 15(c) in their moving papers, nowhere in plaintiff's brief does plaintiff discuss whether this April 1987 Hybrilonics claim relates back to the Complaint.

must consider all relevant factors, including how and where plaintiff paid for the securities, where plaintiff maintained the accounts which incurred the loss, and where the securities were actually handled. *Sack v. Low*, 478 F.2d 360, 367–368 (2d Cir.1973).

Plaintiff argues on this motion for summary judgment that unusual circumstances exist because the trades between plaintiff and defendant were direct sales by defendant brokerage firm, a market maker, which took place in New York, because plaintiff maintained an individual account, a profit sharing account, and a pension account with the defendant brokerage firm and with the out-of-business brokerage firm Steinberg & Lyman in New York, and because when plaintiff transferred those accounts from Steinberg & Lyman, located in New York, to defendant brokerage firm located in New York, those accounts included the securities which are the basis for plaintiff's cause of action. These facts do not constitute unusual circumstances such that plaintiff's economic loss may be said to have occurred in New York rather than where he lived. Plaintiff submits no evidence indicating how the securities were paid for or whether the losses he suffered were reflected in his New York accounts rather than in his wallet, which is to say where he lived—either in Florida or in Pennsylvania.

The only evidence as to how the securities were handled are the trade confirmation slips attached to the First Amended Complaint. These slips show that plaintiff was billed for these transactions in Florida and Pennsylvania, not that trades were being made of stocks maintained in open accounts held in New York.

In *Epstein v. Haas Secur. Corp., supra,* Judge Sand treated facts similar to these in the case at bar. Plaintiffs were attempting to show that they had established their financial base in New York rather than in their states of residence, New Jersey and Pennsylvania. Plaintiffs' funds were transferred to New York, account materials were maintained at defendant Roths-

child's offices in New York, and the securities in question were handled by defendant Rothschild in New York. Judge Sand found that these factors alone would not support a finding of unusual circumstances justifying an exception: "[t]hese facts might apply to any out-of-state plaintiff who sued a New York securities broker, and do not by themselves seem to justify departure from the general rule." *Id.* at 1179. Summary judgment was denied because plaintiffs were able to allege additional facts tending to establish New York as their financial base.

Plaintiff asks for further discovery to develop his argument that the injury occurred in New York, but the facts relevant here are entirely in the control of plaintiff. Further discovery will not shed more light on this issue than an affidavit by plaintiff could have shed. Plaintiff has had an opportunity to submit evidence to show that the claim accrued within New York, but has not done so.

Plaintiff testified in his deposition that, though he considers himself a resident of both Pennsylvania and Florida, he lists his Pennsylvania address on his federal tax returns; he files state tax returns in Pennsylvania, not in Florida; his driver's license lists his Pennsylvania address, and he votes in Pennsylvania. Though plaintiff states in his First Amended Complaint that he resides in both Pennsylvania and Florida, the evidence is clear that plaintiff maintains his official residence in Pennsylvania.

As plaintiff's place of residence, Pennsylvania is the place where his claim accrued. Therefore, if plaintiff's claim would be time barred had he sued in the District of Pennsylvania, then under the borrowing statute, the action is barred in this district. *Ceres Partners v. GEL Associates*, 714 F.Supp. 679, 684–85 (S.D.N.Y 1989), *aff'd* 918 F.2d 349 (2d Cir.1990).

A district court sitting in Pennsylvania would be bound by the statute of limitations for Rule 10b–5 actions adopted by the Third Circuit in *Data Access.* Because the Second Circuit expressly adopted the same statute of limitations applied by the Third

Circuit: "one year after the plaintiff discovers the facts constituting the violation, and in no event more than three years after such violation," *Data Access*, 843 F.2d at 1550, analysis under *Data Access* leads to the same result as was reached under *Ceres Partners*, and obviates the need to decide an issue left open in *Ceres Partners*—namely, whether its holding should be applied retroactively. *Ceres Partners*, at 364.

### 2. Rule 9(b)

Rule 9(b) requires that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b)'s strict requirements are tempered, however, by the general pleading rule set forth in Fed.R. Civ.P. 8(a) that a complaint consist of "short and plain statement[s]" of claims for relief. *See DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242 (2d Cir.1987). Section 10(b) claims, which are based upon fraudulent acts, must satisfy the pleading requirements of Fed.R. Civ.P. 9(b). *See Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986).

■ Defendants argue that the First Amended Complaint lacks the requisite specificity: plaintiff failed to specify what statements were made which became misleading as a result of the alleged omission, what defendants gained as a consequence of the fraud, and which facts establish scienter.

In order to plead fraud with particularity, "a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989). Such allegations cannot be conclusory, but must be supported by assertions of fact. *Luce*, 802 F.2d at 54.

To state a § 10(b) claim with the requisite particularity, plaintiff also must plead scienter. *Cosmas*, 886 F.2d at 12–13. Thus, a complaint must allege not only material misstatements or omissions, but also other circumstances from which may be deduced an intent to deceive or defraud in connection with the purchase or sale of a security. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Luce*, 802 F.2d at 55. Although Rule 9(b) "allows 'condition of mind' to be averred generally, plaintiffs must at least present those circumstances that provide a minimal factual basis for the allegations of scienter." *Eickhorst v. American Completion and Dev. Corp.*, 706 F.Supp. 1087, 1091 (S.D.N.Y.1989). Plaintiff must plead facts that support a "strong inference" that defendants possessed the requisite fraudulent intent. *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), *overruled on other grounds, United States v. Indelicato*, 865 F.2d 1370 (2d Cir.1989) (*en banc*).

On a motion to dismiss, a court must read the complaint generously and draw all inferences in favor of the pleader. *Yoder v. Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 562 (2d Cir.1985). The First Amended Complaint alleges that defendant Patrick, the President and CEO of defendant Baird, Patrick, determined that certain stocks would be aggressively marketed to retail clients. Patrick determined retail prices for these stocks without regard to the actual market prices, as reflected by inter-dealer quotations on the National Quotation Bureau, contemporaneous costs, or contemporaneous prices of Baird, Patrick in actual transactions with other broker-dealers. Patrick then allegedly paid his account executives, including Dirks and Morris, above-average selling commissions to sell these stocks. (First Amended Complaint ¶ 18) Plaintiff also alleges that defendants knew that because the daily quotation price for these stocks was available only through the pink sheets, their fraud would remain undetected by lay investors. (First Amended Complaint ¶ 19)

The First Amended Complaint states that defendants solicited plaintiff to purchase

two of these securities, PSI and Hybrilonics, and that, as a result, plaintiff purchased the stock at a price that included an undisclosed mark-up in excess of 25% of the purchase price. (First Amended Complaint ¶¶ 15, 16) According to the First Amended Complaint, this failure to disclose that the price included an excessive mark-up constituted fraud and resulted in unconscionable purchase prices to retail clients, including plaintiff. (First Amended Complaint ¶¶ 17, 19)

These allegations, if proved, create a sufficiently strong inference that the individual defendants acted with scienter, particularly in view of their own allegations about the ready access brokers had to actual market prices for over-the-counter securities. The statements that became misleading as a result of the alleged omission are obviously the prices quoted by defendant brokers, who gained as a result above average commissions. Defendant Baird, Patrick and defendant Patrick, in turn, gained excessively high mark-ups on each transaction.

■ The particularity requirement of Rule 9(b) also requires that plaintiffs base allegations on information and belief only if the pertinent information is so peculiarly within a defendant's knowledge that plaintiff cannot be expected to plead other than upon information and belief. Even in this situation, plaintiff must state the facts upon which plaintiff's belief is founded. *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986). The purpose of this heightened particularity requirement is to protect defendants from specious fraud allegations.

Defendants contend that plaintiff has failed to meet this burden. According to defendants, plaintiff, confronted with a motion to dismiss the original complaint under Rule 9(b), redrafted the First Amended Complaint merely by dropping all references to information and belief. After conducting a deposition of plaintiff, defen-

dants, not surprisingly, found that plaintiff did not have personal knowledge of many of the facts alleged in the First Amended Complaint.[2] Defendants therefore ask this Court to dismiss the First Amended Complaint for failure to comply with Rule 9(b).

It would have been preferable for plaintiff to have more carefully drafted the First Amended Complaint, but it is self-evident that many of his factual allegations could not have been based upon his personal knowledge, but rather were based on information and belief. *See Mechigian v. Art Capital Corp.*, 639 F.Supp. 702 (S.D.N.Y.1986). Though plaintiff does not specifically state or argue that much of the relevant information is within defendants' control, it is clear that this plaintiff could not be personally familiar with many of the allegations that comprise his complaint. For example, plaintiff cannot possibly be expected to be personally knowledgeable about the internal decisions and arrangements of defendant Baird, Patrick and its employees.

Plaintiff's pleading is technically defective in this respect, but because the First Amended Complaint is otherwise sufficiently particular, this defect does not warrant dismissal. Should plaintiff's allegations prove to have no reasonable basis, defendants can move for Rule 11 sanctions.

## II.

Defendants seek summary judgment on plaintiff's § 12(2) claims on either or both of two grounds: (1) plaintiff's action is time-barred, and (2) plaintiff's § 12(2) claim is legally insufficient in that § 12(2) applies only to initial issuance of securities, not to subsequent trading.

### 1. Statute of Limitations

■ Section 13, which contains the statute of limitations for § 11 and § 12(2) claims, provides:

---

**2.** Defendants' extreme position undermines their own argument: in plaintiff's deposition, defendants' counsel examined plaintiff, not a lawyer, among other things, on whether plaintiff had first hand knowledge of the bases of subject matter jurisdiction articulated in the

first three paragraphs of the First Amended complaint: "Have you ever read the sections of the law referenced in those … paragraphs? … Do you have personal knowledge of those matters? … Do you have any personal knowledge of which acts occurred within this district?"

No action shall be maintained to enforce any liability created under section ... [12(2) ] of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence ... In no event shall any such action be brought to enforce a liability ... more than three years ... after the sale.

The first issue is whether the three-year outside limit in the statute is absolute as to the two 1986 transactions or whether a defendant may be equitably estopped to raise the statute of limitations as a defense if it is guilty of fraudulent concealment.[3] There are no cases in the Southern District of New York permitting a plaintiff to maintain a § 12(2) action beyond the three-year statute of limitations. The Northern District of Oklahoma permitted a plaintiff to sue after more than three years, *In re Home–Stake Production Company Secur. Litigation,* 76 F.R.D. 337 (N.D.Okla.1975), but as Judge Conboy pointed out in *Zola v. Gordon,* the *Home–Stake* court rested its decision on extraordinary facts: the defendants went so far as to enter into a settlement and to sign a consent decree for the purpose of fraudulently concealing " 'the alleged extensive and continuous fraud perpetrated upon Home–Stake investors, the SEC and the Courts for more than a decade.' " 685 F.Supp. at 362, *citing Home–Stake,* 76 F.R.D. at 345. Like the plaintiffs in *Zola v. Gordon,* plaintiff here alleges no facts remotely like those of *Home–Stake.* He alleges no affirmative concealment by defendants. Plaintiff's § 12(2) claims based on the 1986 transactions and the April 1987 Hybrilonics transaction are therefore time-barred.

2. The Scope of Section 12(2) of the 1933 Act

■ The transactions involved in this suit were not initial offerings. Plaintiff purchased these penny stocks in the secondary market.

Several cases in this District have held that § 12(2) covers only sales in connection with the initial distribution of securities, not subsequent trading in the secondary market. *See Strong v. Paine Webber, Inc.,* 700 F.Supp. 4, 5 (S.D.N.Y.1988) (Griesa, J.); *SSH Co. Ltd. v. Shearson Lehman Bros. Inc.,* 678 F.Supp. 1055, 1059 (S.D.N.Y.1987) (Leval, J.); *McCowan v. Dean Witter Reynolds, Inc.,* Fed.Sec.L.Rep. (CCH) 94,423 at 92,726–727, 1989 WL 38354, 1989 U.S. Dist. LEXIS 3714 (S.D.N.Y.1989) (Carter, J.); *Klein v. Computer Devices, Inc.,* 591 F.Supp. 270 (S.D.N.Y.1984) (Goettel, J.). Some other district courts have agreed. *See Mix v. E.F. Hutton & Co., Inc.,* 720 F.Supp. 8, 12 (D.C.1989) (Hogan, J.); *Ralph v. Prudential–Bache Secur. Inc.,* 692 F.Supp. 1322 (S.D.Fla.1988) (Paine, J.); *Leonard v. Shearson Lehman/American Express Inc.,* 687 F.Supp. 177 (E.D.Pa.1988) (Giles, J.). There are conflicting opinions by two New Jersey district judges within a day of one another in 1989. *See Panek v. Bogucz,* 718 F.Supp. 1228, 1232 (D.N.J.1989) (Bissell, J.) (§ 12(2) applies only to initial offerings); *but see Elysian Federal Savings Bank v. First Interregional Equity Corp.,* 713 F.Supp. 737, 751 (D.N.J.1989) (Lechner, J.) (nothing in § 12(2) limits its prohibition to communications occurring only during initial distributions). No circuit court has ruled directly on this issue.

The dispute arises from both the wording of § 12(2), and the extent to which some courts view the 1933 Act generally as restricted to initial offerings while the 1934 Act deals with subsequent trading. Section 12(2) reads:

Any person who ... (2) offers or sells a security ... by the use of any means or

**3.** The doctrine of equitable estoppel, if it can be applied at all, assumes that the statute of limitations has run but can be used to estop defendant from asserting the statute of limitations as a defense, " 'because his conduct has induced another into forebearing suit within the applicable limitations period. Its application is wholly independent of the limitations period and takes its life, not from the language of the statute, but from the equitable principle that no man will be permitted to profit from his own wrongdoing in a court of justice.' " *Zola v. Gordon,* 685 F.Supp. 354, 361 n. 6 (S.D.N.Y.1988), quoting *Bomba v. W.L. Belvidere, Inc.,* 579 F.2d 1067, 1070 (7th Cir.1978).

instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading ... shall be liable to the person purchasing such security from him ...

15 U.S.C.A. § 77*l*. The key phrase, of course, is "by means of a prospectus or oral communication." According to the court in *SSH Co. Ltd.*, the phrase "prospectus or oral communication" means "a prospectus, registration statement, or other communication related to batch offering of securities, not to subsequent trading." *Id.*, 678 F.Supp. at 1059. That court also found that the purpose of the 1933 Act was to regulate the distribution of securities, not post-distribution trading. *Id.*

The *Mix* court found the statutory language ambiguous, then looked at the legislative history of the 1933 Act and found it "relatively clear on this point." *Mix*, 720 F.Supp. at 11. According to the *Mix* court, that legislative history shows that the statute was meant to affect only new offerings of securities and not ordinary redistributions unless they have the characteristics of new offerings. *Id.*

The *Mix* court also examined the legislative history of § 17 to interpret the reach of § 12(2). According to the Supreme Court in *United States v. Naftalin*, 441 U.S. 768, 99 S.Ct. 2077, 60 L.Ed.2d 624 (1979):

[a]lthough it is true that the 1933 Act was primarily concerned with the regulation of new offerings, respondent's argument fails because the antifraud prohibition of § 17(a) was meant as a major departure from that limitation. Unlike much of the rest of the Act, it was intended to cover any fraudulent scheme in any offer or sale of securities, whether in the course of an initial distribution or in the course of ordinary market trading.

*Mix v. E.F. Hutton & Co.*, 720 F.Supp. at 12, *citing Naftalin*, 441 U.S. at 777–78, 99

S.Ct. at 2084. The *Mix* court reasoned that because there was nothing in the legislative history of § 12(2) to show that § 12(2) was meant to have the same scope as § 17, it should be narrowly read to apply only to initial offerings. *Id.*

The district court in *Elysian Federal Savings Bank v. First Interregional Equity Corp.*, looked at the same evidence and came out the other way. With regard to *Naftalin*, the court found no reason why the Supreme Court's reading of § 17 should not apply as well to § 12(2). *Elysian Federal Savings*, 713 F.Supp. at 749. Defendant in *Elysian Federal Savings Bank* argued that § 12(2) should be read more narrowly than § 17 because § 12(2) includes the words "by means of a prospectus," thereby suggesting an initial offering in which a formal prospectus is issued. The court responded by noting that the language goes on to say "or oral communication" without any indication that the oral communication need be related to a prospectus or initial offering. By so responding, the court appeared to accept *sub silentio* defendant's narrow reading of the word "prospectus." However, as set forth below, the statute defines "prospectus" to include writings or broadcasts that go far beyond what is generally evoked by the word "prospectus"—the printed document sent to potential investors pursuant to a registration statement for a batch offering of securities.

There is also dictum favoring a broad reading of § 12(2) in a recent opinion by Judge Easterbrook of the Seventh Circuit, who wrote, while analyzing whether § 13 of the 1933 Act was appropriate for use as a uniform statute of limitations for Rule 10b–5 actions:

Section 11 deals with errors and omissions in registration statements, including the portion of the registration statement that circulates as the prospectus. Section 12(1) deals with sales "in violation of section 5"—that is, unregistered sales of securities required to be registered. *Section 12(2) addresses all other forms of materially incorrect or misleading selling literature and oral com-*

*munications in the sale of a security.* Data Access selected § 13 as the appropriate federal law because misstatements and omissions that violate § 12(2) are the closest match to the subjects of Rule 10b–5. (Short could not have sued under § 12 itself; she complains of fraud by the buyer, while § 12(2) is addressed to fraud by the seller. Still, *§ 12(2) applies to the kind of conduct involved here.* Short v. Belleville Shoe Manufacturing, Co.,* 908 F.2d 1385 (7th Cir.1990) (emphasis added) (plaintiff alleged that she was defrauded by the corporation and its controlling shareholders as to the value of the shares the corporation redeemed from her).

Though the issue is far from clear[4], I agree with result reached by the district court in *Elysian Federal Savings Bank,* although not with all of its reasoning, and with the Seventh Circuit's dictum that § 12(2) is not limited to initial offerings. The language "by means of a prospectus or oral communication" does not mean that § 12(2) does not reach post-distribution trading. Even ignoring the broad scope of the phrase, "or oral communication", the term "prospectus" does not show that Congress meant to limit § 12(2) to initial offerings. "Prospectus" is defined in § 2(10) of the 1933 Act as: "unless the context otherwise requires ... any prospectus, notice, circular, advertisement, letter, or communication, written or by radio or television, which offers any security for sale or confirms the sale of any security...." No case has suggested that the "context [of § 12(2) ] otherwise requires" a narrower definition of prospectus, nor does my own reading of the statute. The term "offer for sale" is defined in § 2(3) to include "every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value." *See United States v. Naftalin,* 441 U.S. at 773, 99 S.Ct. at 2081 ("The statutory terms ['offer' and 'sell'], which Congress expressly intended to define broadly, ... are expansive enough to encompass the entire selling process"). Where the language of the section is so consistently broad, reference to

the general focus of the 1933 Act, that is, its primary concern with the regulation of new offerings, is unwarranted.

Therefore, § 12(2) is not limited to initial offerings, and plaintiff's non-time-barred § 12(2) claims may proceed.

### III.

■ Defendants also move to dismiss plaintiff's RICO claim under Rule 9(b) and on the ground that plaintiff has failed to assert a viable claim. According to defendant, the First Amended Complaint fails to allege an "enterprise." The following allegations are said to lack the requisite specificity: the "pattern of racketeering activity," defendants' scienter, and the existence of a RICO conspiracy. In their reply brief defendants add that plaintiff cannot satisfy the "continuity plus" requirement of 18 U.S.C. § 1962.

■ To establish a civil RICO claim, plaintiff must plead (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). On a motion to dismiss a RICO claim, the court must read the facts in the light most favorable to plaintiff and may dismiss the case only if "it is clear that no relief could be granted under any facts that could be proved consistent with the allegations." *H.J. Inc. v. Northwestern Bell Telephone Co.,* — U.S. ——, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989), *citing Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). By that standard, plaintiff has alleged a RICO claim sufficiently to defeat this motion to dismiss on the pleadings.

Baird, Patrick is clearly referred to in the complaint as the enterprise, even though plaintiff has not specifically used the word "enterprise". As to defendants' other specificity objections, plaintiff has alleged facts suggesting that defendant Patrick knowingly set prices without regard to actual market prices and which include markups in violation of the NASD guidelines by which defendant Baird, Patrick, as a mem-

---

**4.** As Professor Loss commented in his treatise, *Fundamentals of Security Regulation:* "Since § 12(2) is not too happily drafted, it is best not to paraphrase." p. 1021.

ber of the National Association of Securities Dealers, Inc., and the individual defendants as registered brokers, are bound. Patrick allegedly communicated these excessive prices to defendants Dirks and Morris, who solicited retail clients to purchase these stocks. Plaintiff alleges that Dirks and Morris were paid above-average selling commissions, which created a reasonable inference that they also knew that excessive mark-ups were being charged. Defendants themselves insist that the market prices for these stocks were readily available to brokers from the daily pink sheets.

Plaintiff has also alleged facts sufficient to create an inference that defendants knew that their clients would not be aware at the time of solicitation that the prices quoted bore no reasonable relationship to the actual market price listed on the pink sheets. Plaintiff alleges that the daily quotation price for these stocks was available only through the pink sheets and not readily available to the public.

These facts sufficiently allege scienter on the part of all of the individual defendants. That defendants charged and were paid above-average selling commissions creates a reasonable inference that there was an agreement among them to charge the allegedly excessive mark-ups. Plaintiff has also clearly outlined the role that each defendant allegedly played in the scheme.

A pattern of racketeering activity requires the commission within ten years of at least two predicate acts that violate laws listed in 18 U.S.C. § 1961(1); these acts must be related and must amount to, or threaten the continued likelihood of, continued criminal activity. *H.J. Inc.,* 109 S.Ct. at 2899.

In order to allege continuity, "[w]hat is required is that the complaint plead a basis from which it can be inferred that the acts of racketeering activity were neither isolated nor sporadic." *Beauford v. Helmsley,* 865 F.2d 1386, 1391 (2d Cir.1989). At the pleading stage, if the threat of continuing racketeering activity is inferable from the complaint, then whether "defendants' actions are continuing in nature or isolated or sporadic will be the subject of proof at trial." *Procter & Gamble Co. v. Big Ap-*

*ple Industrial Bldgs., Inc.,* 879 F.2d 10, 18 (2d Cir.1989), *cert. denied Big Apple Industrial Bldgs. v. Procter & Gamble Co.,* — U.S. —, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990).

Plaintiff has alleged facts sufficient to infer that defendants as a regular business practice knowingly charged excessive mark-ups in violation of the federal securities laws. These allegations are sufficient to meet the "continuity plus" requirement of § 1962. *See H.J. Inc.,* 109 S.Ct. at 2902.

### IV.

Plaintiff asserts diversity as the basis for subject matter jurisdiction over his state law claims, not pendent jurisdiction. Plaintiff has also pleaded damages in excess of $50,000. Therefore, even if the court found that plaintiff could not prevail as a matter of law on his federal claims, defendants are not entitled to dismissal of plaintiff's state law claims.

\* \* \*

For the reasons set forth above, defendants' motion to dismiss is granted only as to the Rule 10b–5 and § 12(2) claims based on the January 31, 1986, February 26, 1986, and April 16, 1987 purchases, and is otherwise denied.

SO ORDERED.